[Criminal No. 701.   Filed December 16, 1929.]

[282 Pac. 930.]

INDIAN FRED and HOSTEIN SET CHIZZY BEGA, Appellants, v. STATE, Respondent.

Mr. W. E. Ferguson, for Appellants.

Mr. K. Berry Peterson, Attorney General, Mr. Riney B. Salmon, Assistant Attorney General, and Mr. Dodd L. Greer, County Attorney, for the State.

LOCKWOOD, C. J.—A complaint was filed in the justice court of Adamana precinct, Apache county, on the thirteenth day of June, 1928, against two young Navajos, Indian Fred and Hostein Set Chizzy Bega, hereinafter called defendants, charging them with attempted train wrecking. They were given a preliminary examination and bound over to the superior court upon the charge set up in the complaint. On the twenty-third day of June the county attorney of Apache county filed an information against them based upon the order of the committing magistrate aforesaid. On July 2d defendants demurred to the information, but so far as the record shows, the demurrer was never disposed of, and the minutes of the superior court show that on the same day they filed

an oral motion to quash the information. The motion was sustained, and the court ordered the "defendants remanded into the custody of the sheriff for further action." It appearing to the court that they claimed to be under the age of eighteen years, the matter was set down for hearing in the juvenile court on the ninth day of July. After this hearing, an order was made that "defendants be remanded to the sheriff and by him handed over to the Committing Magistrate." No new complaint was filed, but the magistrate set the tenth day of July, 1928, for a second preliminary hearing on the original complaint, and defendants waiving examination, they were by him again bound over to the superior court on the same charge, and the next day an information based on this order was filed against them. On August 13th, a new motion to set aside the information and a demurrer thereto were denied, the defendants were arraigned and pleaded not guilty, and on August 22d the case came on for trial before a jury, which eventually returned a verdict in the following language:

"We, the Jury, duly empaneled and sworn in the above-entitled action, upon our oath do find: Defendants Guilty as Charged and fix the punishment at, 10 years ten years."

A motion for new trial having been overruled, the court denied the same and sentence was duly pronounced on the verdict, directing that defendants be confined in the state penitentiary at Florence for not less than ten years and not more than ten years and one day, whereupon they have appealed to this court.

There are some twelve assignments of error, which we will consider as seems advisable. The first, that the court erred in overruling the demurrer to the information, is not briefed, nor was it urged by defendants on oral argument. We therefore need consider

it no further than to say that the information on its face appears to charge properly a violation of section 436 of the Penal Code of 1913.

The second assignment is that defendants were not legally committed in accordance with law. The argument made in open court was based upon the proposition that when the court sustained the motion to quash the information on July 2d, the complaint upon which it was based fell with it; and that before a new order committing defendants could be made, it was necessary to file a new complaint in the justice court. Section 975, Penal Code of 1913, reads as follows:

"975. If the motion (to set aside) is granted the court may order the defendant to appear before the judge of the superior court, or any other magistrate of the county, to be examined as in other cases. If such examination be not held and an information filed against the defendant within fifteen days after the making of such order the defendant shall be discharged. Pending such examination the defendant shall be admitted to bail in such sum as the court shall fix, if the offense charged be bailable. If the offense be not bailable the defendant shall remain in custody."

A motion to set aside an information is based on the ground, either that it was not signed by the county attorney, or else that the defendant has not been legally committed. If granted, the law originally provided the defendant must be discharged, but that the order should be no bar to a future prosecution for the same offense. Sections 974 and 976, Pen. Code 1913. These sections appeared in the Code of 1901, but section 975 was absent therefrom. Of course when the law so read, an order setting aside an information required that every step preliminary to a criminal prosecution be taken *de novo* (including, of course, a new complaint), in case it was desired to file a new information. In 1913 the legislature added section 975. We think its effect was to provide that

when the superior court so ordered, the case went to a committing magistrate for a new examination wherein the error which caused the sustaining of the motion might be corrected without the necessity of repeating steps which were already legally taken. Any other construction would make the section purposeless.

The first order of the court, after the motion was sustained, was that the defendants be ''remanded into the custody of the sheriff for further action.'' The next proceeding taken was the hearing in the juvenile court, and after such hearing the order was ''that the defendants be remanded to the sheriff and by him handed over to the committing magistrate,'' and ''that all witnesses appear here before the committing magistrate, tomorrow morning.'' While the minutes do not show that an order was made in the exact language of section 975, *supra*, we are of the opinion that the legal effect of the orders above quoted was the same as if it had been. Since there is no contention the original complaint is faulty, the court properly denied the motion to set aside the second information.

The third assignment is that the court admitted certain hearsay evidence over the objection of defendants. It appears that the state attempted to offer in evidence a confession alleged to have been made by them. Upon the offer, their counsel promptly objected and asked that its admissibility be argued in the absence of the jury. The jury was thereupon excused, and the court investigated the matter. The evidence showed that the defendants were two Navajo Indian youths who neither spoke nor understood the English language, and that while they were in jail they made certain statements through one Jim James, an interpreter, in the presence of the county attorney and Deputy Sheriff Platt. The latter testified to certain statements made by defend-

ants, but admitted that he did not understand their language and that his testimony was based on what the interpreter told him. This was clearly hearsay, and since properly objected to, was inadmissible. The interpreter, however, testified in person as to the statements made by defendants, and since the hearing was before the court and not before the jury, we must presume the court was not influenced by the improper evidence. *Abernathy* v. *Reynolds,* 8 Ariz. 173, 71 Pac. 914; *Boston & Arizona etc. Co.* v. *Lewis,* 3 Ariz. 5, 20 Pac. 310. Thereafter the jury was called in, and the interpreter again testified before it as to the terms of the confession. Platt was then called to the stand, and after testifying without objection that he heard defendants make a statement in reference to the case in the presence of the county attorney and Jim James, the following questions and answers appear in the record:

"Q. State just what was said and done? A. I was up to the court house on Sunday and Jim James—

"Mr. Ferguson: We object to that on the ground that the proper foundation has not been laid.

"The Court: He may answer.

"A. I asked him what they wanted and he said they wanted to talk.

"Mr. Udall: Was this in the presence of the defendants, these statements that were made? A. Yes, through the interpreter. I asked them what they wanted to tell and they said the truth about the wreck, and I said if you want to talk I will get the County Attorney and I went and got Mr. Udall and we took them out of jail and up to the County Attorney's office.

"Q. What preliminary statements, if any, were made by the County Attorney, before the defendants made any statements? A. You told the defendants through the interpreter that they didn't have to talk if they didn't want to.

"Mr. Ferguson: That is hearsay.

"Mr. Udall: It is in the presence of the defendants.

"The Court: He may answer.

"A. He told them anything they said would be used either for or against them.

"Q. And following those admonitions by myself what statements, if any, did these defendants make in the presence of the group that you have named there in the County Attorney's office on June 17th, 1928, and through the interpreter Jim James?

"Mr. Ferguson: We object on the ground that it is hearsay. I would like to ask a few questions on voir dire.

"Q. Do you speak Navajo? A. No, sir.

"Q. Did these defendants speak English? A. No, sir.

"Q. Then so far as you are concerned you do not know what they said? A. No, sir.

"Mr. Ferguson: We object on the ground of hearsay.

"Mr. Greer: I think the objection is good, your Honor.

"The Court: James has already testified, sustain the objection."

It appears that the first objection on the ground that the testimony was hearsay was made to the question, "What preliminary statements, if any, were made by the County Attorney, before the defendants made any statements?" This was answered: "You told the defendants through the interpreter that they didn't have to talk if they didn't want to." This was clearly admissible. It was not a statement of the defendants made through an interpreter, but the statement of the county attorney made in English in the presence of the witness to the interpreter for translation to the defendants, and is relevant on the issue of whether or not the alleged confession was obtained through any improper inducement offered by the county attorney or was freely and voluntarily made by the defendants. The next question called for an answer which would have been hearsay and prejudicial, but the court properly sustained the ob-

jection and it was not answered. The third assignment of error is not well taken.

The fourth assignment is that the court improperly admitted the alleged confession of defendants without determining as a preliminary question that it was free and voluntary. The leading authority in Arizona on the admission of confessions in criminal cases is *Kermeen* v. *State,* 17 Ariz. 263, 151 Pac. 738. In that case the trial court in the absence of the jury examined into the question of whether two confessions offered in evidence were voluntary, and rejected one but admitted the other, and thereafter instructed the jury in substance that they might also pass upon the question of whether the one admitted was voluntary, and, if they did not believe it to be such, they should reject it. In passing upon the question of law involved, we held the rule to be that the court should determine, prior to permitting the confession to go to the jury, whether it was or was not voluntary, and that in making such determination it was clothed with a considerable amount of discretion. We also held impliedly, though not specifically, that it was not erroneous to leave the ultimate determination of whether the question was voluntary to the jury, even though the court had already determined that issue in the affirmative. We know of no state where a rule more favorable to the defendant is followed. In most jurisdictions, if there is a conflict of evidence on the question, and the court is not satisfied that the confession is voluntary, it should submit it to the jury with instructions to disregard it if upon all the evidence they believe it to be involuntary. *Wilson* v. *United States,* 162 U. S. 613, 40 L. Ed. 1090, 16 Sup. Ct. Rep. 895; 16 C. J. 927, and notes. In the case at bar, the court examined very thoroughly into the admissibility of the confession and allowed it to go to the jury, giving substantially the same instruction as was given in the Kermeen case. We think the evi-

dence shows the court did not abuse its discretion in the preliminary ruling, and carefully safeguarded the rights of the defendants by the additional instruction to the jury. Counsel lays much stress on the remark of the court: "I shall let this matter go before the jury. The question is a question of fact," as being an expression of opinion by the court that it was in doubt as to whether the confession was voluntary or not. We are of the opinion the context of the remark shows the court referred to the truth or falsity of the confession being an issue of fact rather than the voluntariness thereof.

The fifth assignment is that the court erred in certain instructions to the jury. One was to the effect that it would make no difference that a train was not actually derailed, but that the offense was complete if the defendants unlawfully placed an obstruction on the track with the *intent* of derailing a train. The instruction clearly follows the definition of the offense given in the statute. Section 436, Pen. Code 1913. The instructions in regard to the question of whether the confession was voluntary correctly state the law. *Kermeen* v. *State, supra.* Defendants also complain of an alleged instruction in regard to certain testimony given in previous hearings of the matter. We have examined the record carefully and cannot find where the instruction complained of was given. There is no merit in this assignment.

The sixth assignment is that the court improperly admitted evidence concerning the testimony of defendants given at the hearing before the juvenile court. The rule in respect to this is well stated as follows:

"The constitutional right of defendant not to be compelled to be a witness against himself is not violated by the introduction in evidence of his testimony, voluntarily given, on a former trial for the same offense, or in another court, or at the coroner's

inquest, or at the preliminary hearing, or before the grand jury, or at an extrajudicial investigation, or at a preliminary examination or trial for another offense. . . . The controlling question is whether the testimony was voluntary; and that must be determined from the facts in each case." 16 C. J. 569.

There is nothing herein showing that the testimony in the juvenile court was involuntary, and we are of the opinion that the circumstances surrounding it are such that the court properly admitted evidence concerning it.

The tenth assignment is that the record fails to disclose that a reporter's transcript of the testimony given at the preliminary examination, at which the defendants were held to answer, was made. The statute only requires that the testimony of witnesses be reduced to writing "in cases of homicide," it being optional with the county attorney in other cases. Section 881, Pen. Code 1913. No demand was made by the county attorney for a transcript, and this is not a homicide case. Further, the record shows that defendants waived their preliminary examination. Such being the case, obviously no transcript could be made.

The eleventh assignment is that the court erred in sentencing the defendants to serve not less than ten years nor more than ten years and one day, when the verdict of the jury fixed the penalty at ten years. Section 438, Penal Code of 1913, provides that any person violating the provisions of the section under which the information in this case was drawn "shall be punished by death, or by imprisonment in the state prison for not less than ten years, at the discretion of the jury trying the case. . . . " The verdict of the jury, quoted above, fixed the penalty at ten years. The court evidently believed that in passing judgment it was bound by the provisions of section 1127 of the Penal Code of 1913 to pronounce an inde-

terminate sentence with a minimum and a maximum period. We are of the opinion that the objection on this point is well taken. Under the law of Arizona, in the ordinary criminal case, the court determines the severity of the punishment, within the limits set forth in the statute. In such cases, the provisions of section 1127 obviously apply, and the court must fix both a minimum and a maximum term of imprisonment. Under section 438, however, the jury fixes the penalty, and the court has no discretion in pronouncing sentence, but must impose the precise one named by the verdict. The usual rule is that, if there is a conflict between them, a special statute controls the terms of a general one on the same subject. 36 Cyc. 1151 and cases cited. The court should have sentenced the defendants to serve a fixed term of ten years, instead of an indeterminate one of not less than ten years nor more than ten years and one day.

The twelfth assignment is that the verdict of the jury failed to state where the sentence was to be served. In view of the fact that the statute itself expressly provides that imprisonment in case of a conviction thereunder shall be in the state prison, we think this omission was immaterial.

Assignments Nos. 8 and 9 are that the verdict and judgment are not supported by the evidence in the case. In passing upon assignments of this kind, the rule is that where there is any substantial evidence upon which the verdict of the jury is based, the mere weight and sufficiency of it is not to be examined by the appellate court. *Waddle* v. *State,* 27 Ariz. 68, 229 Pac. 944; *Duff* v. *State,* 19 Ariz. 361, 171 Pac. 133.

Two witnesses testified that they actually saw the defendants put the tie on the track. One witness testified that defendants admitted to him they had placed the obstruction on the track, and defendants do not deny making the admission, but claim that they lied

in so doing, in the hope of escaping punishment. The credibility of the witnesses is, of course, for the jury, and if they believed the testimony offered on behalf of the state, they were justified in returning the verdict they did.

The seventh assignment raises the vital issue in the appeal, which is that the court erred in denying the motion for new trial on the ground of newly discovered evidence. This newly discovered evidence was set forth in the motion for new trial in the form of three affidavits. The first was by one Andrew Martin to the effect that he saw the witnesses Little Joe and his wife at a time and place which would indicate that they could not have been where they claimed they were when they saw the defendants place the obstruction on the track. Defendants produced a number of witnesses at the trial who testified to substantially the same state of facts as those set forth in Martin's affidavit, the newly discovered evidence being thus purely cumulative and impeaching in character. It is the general rule that a new trial should not be granted for evidence of this nature. *High* v. *Territory*, 12 Ariz. 146, 100 Pac. 448; *State* v. *Stowe*, 3 Wash. 206, 14 L. R. A. 609, and notes, 28 Pac. 337.

The other two affidavits were made by two Indian women, Tulie Tsosa and Blanche Martin. These are to the effect that Little Joe's wife, one of the state's witnesses who claimed to have seen the tie placed on the track, stated to one of these women in the presence of the other, shortly after the first preliminary hearing on June 13th, but before the trial in the superior court, that she had not told the truth at that hearing, and that as a matter of fact she and her husband had not seen defendants place the tie on the track, but had testified falsely in order to secure the release of Little Joe and Tommy Martin, her son, who were then being held in custody for bootlegging;

and that she further requested the affiant not to tell what time she, her husband, and Tommy Martin left their camp on the evening of June 10th, the night they claimed to have seen defendants place the tie on the track. It developed during the trial that Little Joe had been convicted of bootlegging and fined and imprisoned before he gave his testimony in the superior court. The general rule is that contradictory statements made by a witness not under oath are admissible only for the purpose of impeaching the witness, unless he is a party to the case and the statements are against interest. *Young Chung* v. *State,* 15 Ariz. 79, 136 Pac. 631.

It will be seen that the alleged statements of Little Joe's wife were made before the trial of this case, and are merely contradictory of her testimony given later at the trial. If a new trial were granted, they would not be admissible at all, unless at the new trial she again testified as she did at the first one, and then only for the purpose of impeaching her testimony. In no circumstances could they be offered as direct testimony on the part of the defense. It would appear that these affidavits clearly are insufficient to justify the granting of a new trial, as being impeaching only. *High* v. *Territory, supra; State* v. *Stowe, supra.* It is urged, however, by defendants, that they do more than show mere contradictory statements, and that they prove the conviction was obtained upon perjured testimony, and in support thereof they cite the case of *Powell* v. *Commonwealth,* 133 Va. 741, 33 A. L. R. 541, 112 S. E. 657. We have examined that case carefully, and are of the opinion the facts therein differ materially from those in the case at bar. In the Powell case the alleged contradictory statements of the witness were made *after* the trial instead of, as in the present case, being made *before;* and in referring to the general rule that newly discovered evidence which is merely impeach-

ing does not justify a new trial, the court therein specifically holds that proof of contradictory statements of the witness made *prior* to the trial and not under oath do not, as a rule, justify a new trial. Further, the Powell case is contrary to the general rule even as to contradictory statements made *after* the trial. *Talley* v. *State,* 18 Ariz. 309, 159 Pac. 59; *People* v. *Tallmadge,* 114 Cal. 427, 46 Pac. 282; *Quinn* v. *People,* 60 Colo. 217, 152 Pac. 148; *State* v. *Morse,* 12 Idaho 492, 86 Pac. 53; *Ryal* v. *State,* 16 Okl. Cr. 266, 182 Pac. 253. And this is true though the witness himself after the trial makes affidavit that he has testified falsely, if there is other evidence in the record to support the verdict. In the case at bar, the witness Tommy Martin who had, in common with Little Joe and his wife, testified at the preliminary examination that they were all three present and saw defendants place the tie on the track, at the trial repudiated his former testimony and accused Little Joe and his wife of lying in regard to this matter at the trial. Thus, the veracity of the state's witnesses was attacked before the jury on the very point on which the affidavits of the two Indian women endeavor to attack it. The learned trial judge was in a much better position than we are to determine the weight to be given these affidavits, and whether or not the testimony set forth in them would probably change the result in case of a new trial. He overruled the motion, and on the law and the record we cannot say he abused his discretion in so doing.

This disposes of all the assignments of error. The testimony in the case, taken as a whole, is irreconcilable, and part, at least, is unquestionably perjured. Taking into consideration the characters of many of the witnesses, it is not strange that such is the fact. There is, however, in the record sufficient evidence to sustain a conviction, and the jury was in a far better position than we are to determine which, if

any, of the witnesses told the truth. Their verdict on this issue is conclusive upon us. The only error in the case is in the sentence imposed by the trial court, and its sole effect, construed in the strictest manner, would be to require us to remand the case to the superior court with instructions to resentence defendants for a fixed term of ten years. It is not necessary that the state be put to this additional expense. Under section 1172, Penal Code of 1913, this court has ample authority to correct the error.

It is ordered that the sentence of the superior court be modified so as to direct that the defendants be confined in the state prison for the fixed term of ten years instead of the indeterminate period of not less than ten years nor more than ten years and one day, and as modified the judgment is affirmed.

McALISTER and ROSS, JJ., concur.