[Civil No. 3941. Filed March 7, 1938.]

[77 Pac. (2d) 203.]

ORAL W. TUCKER, as Executor of the Estate of GEORGE P. LYMAN, Deceased, Appellant, v. THOMAS S. REIL, Appellee.

Mr. Leslie B. Allen and Mr. Joseph W. Meek, for Appellant.

Messrs. Misbaugh & Fickett, for Appellee.

LOCKWOOD, J.—Thomas S. Reil, hereinafter called plaintiff, brought suit against Oral W. Tucker as executor of the estate of George P. Lyman, deceased, hereinafter called defendant, to recover the sum of $1,887, which it was alleged said estate owed plaintiff for personal services rendered, and for groceries and other merchandise furnished, to the said George P. Lyman during his lifetime. Plaintiff alleged in his complaint

that defendant was the executor of the estate of George P. Lyman, deceased; that he had published a notice to creditors as required by law, and that plaintiff had, within the statutory period, presented his claim to the executor for services and merchandise furnished to Lyman in his lifetime as aforesaid, and that defendant had refused to approve the claim, and denied liability thereon. The defendant demurred to certain items set up in the complaint on the ground that it appeared they were barred by the statute of limitations, and then answered, admitting his official capacity as executor, and that the claim had been presented, but denying all other allegations of the complaint, and again set up the statute of limitations as to that portion of the claim which it was claimed was barred thereby.

The case was tried to the court sitting with a jury, and judgment was rendered in favor of plaintiff for the sum of $1,080. The usual motion for a new trial was made, and was denied on condition that plaintiff would remit a certain amount from the verdict, and this being done, the motion was overruled, whereupon this appeal was taken.

There are some twenty-three assignments of error, several of which contain more than one matter, but we think there are only two questions which we need consider in determining the appeal: (1) Did the court err in admitting evidence of the contents of the will of Lyman? and (2) did it err in permitting plaintiff to ask of a number of defendant's witnesses as to whether or not they were members of the Seventh Day Adventist Church?

The complaint was for a recovery of the reasonable value of services rendered and merchandise furnished to deceased during his lifetime. It would appear, therefore, that the only matters necessary for plaintiff to prove to make a *prima facie* case were that the services and merchandise set up were really fur-

nished deceased during his lifetime, and the reasonable value thereof. The only defenses which could be made against such a case were that the services and goods had not been furnished; that they were not of the value alleged; that they had been furnished gratuitously; or that they had been paid for. It was utterly immaterial, so far as the case was concerned, whether the estate of deceased was solvent or not, whether it was small or great, or how he had disposed of it by will. If the allegations of the complaint were true, and the services and goods were not paid for nor furnished gratuitously, plaintiff was entitled to have his claim established by the court, regardless of the nature of the will of deceased or the size of the estate. There is one theory, and one only, upon which the evidence of the class to which we have referred could have had any bearing upon the real issues of the case. It might be said that if the deceased had willed most of his property to the Seventh Day Adventist Church, then witnesses of that religious faith who testified on behalf of defendant might, perhaps, be biased in their testimony for the reason that an allowance of the claim of plaintiff would reduce the amount of the estate passing to the church to which they belonged. Evidence tending to show that a witness has an interest in the result of a case is usually admissible as bearing on his credibility, and while it is perhaps extending the rule to the extreme limit to hold that the interest of a church in the indirect result of a lawsuit is of a nature which permits such interest and membership by the witness in that church to be shown, if it were not for one thing it might, perhaps, be held admissible for what it was worth. That one thing, however, is the Constitution of Arizona. Section 12 of article 2 of that Constitution reads, in part, as follows:

"No religious qualification shall be required for any public office or employment, nor shall any person be incompetent as a witness or juror in consequence of his opinion on matters of religion, *nor be questioned touching his religious belief in any court of justice to affect the weight of his testimony.*" (Italics ours.)

This is a direct prohibition against questioning any witness as to his religious belief, for the purpose of affecting his credibility. The language is positive and explicit. The only possible reason which can be advanced that it is inapplicable to the present situation is that an inquiry as to one's membership in a particular church is not questioning him "touching his religious belief." We think such an argument untenable. The fact that a man belongs to a certain church is certainly presumptive evidence that he believes in the fundamental principles of that church. When, therefore, a witness is asked in regard to his membership in a particular church, he is, in effect, being questioned in regard to his religious belief. It was, therefore, erroneous for the court to permit plaintiff's counsel to question any of defendant's witnesses in regard to their religious affiliations. The only possible purpose of such a question would be to attack the credibility of such witnesses, and this the Constitution expressly prohibits. This being the case, it also follows that it was equally error to permit evidence to be introduced to the effect that the deceased had willed the bulk of his property to the Seventh Day Adventist Church, for except as a preliminary to the questioning of the witnesses as to their religious faith for the purpose of showing their interest, any reference to the terms of the will is irrelevant to any of the legal issues of the case. Indeed, counsel for plaintiff, on oral argument, did not seriously contend that the admission of such evidence was not erroneous, but confined himself to insisting most vigorously that this error had been

waived by defendant through a failure to object at the proper time to the asking of the questions, and by himself introducing evidence of a similar character.

■■ It is the general rule that unless objection is made to the admission of evidence it cannot be urged on appeal that it was error for the court to admit it. *Santa Rita Land & Min. Co.* v. *Mercer,* 3 Ariz. 181, 73 Pac. 398; *In re Schuster's Estate,* 35 Ariz. 457, 281 Pac. 38. It is also the usually accepted rule that where counsel has himself injected a certain issue into the case, he may not object because the other party also introduces evidence of a similar nature. *Murphy* v. *Whitlow,* 1 Ariz. 340, 25 Pac. 532; 64 C. J. 172, and notes. Let us, therefore, examine the transcript of the evidence to determine the proper application of the different rules of law which we have stated. Plaintiff called defendant for cross-examination witness as his first witness, under section 4416, Revised Code 1928, which reads as follows:

*"Cross-examination of adverse party.* A party to a civil action or proceeding, or a person for whose immediate benefit such action or proceeding is prosecuted or defended, or the directors, officers, superintendent or managing agent of a corporation which is a party, may be examined upon the trial thereof by the adverse party as if under cross-examination, and the party examining shall not be concluded by the examination. Such witness when so called may be examined by his own counsel, only as to the matters testified to on such examination."

■■ We think that many counsel have misunderstood the true meaning of this statute. Its only effect is to permit the party calling the witness to ask leading questions, and to provide that he is not concluded by the answers of the witness, and in no other respect does it change the usual rules applying to the examination of witnesses. In other words, the witness is conclusively presumed to be a hostile witness

and the rules of law governing witnesses of this nature are applied. When, therefore, defendant was called under the statute, any questions which were asked of him by counsel for the plaintiff were subject to the same objections as to their competency, relevancy, or materiality as though plaintiff himself were testifying, and when he was cross-examined by his own counsel after plaintiff's counsel had finished the examination, such examination was subject to the same rules as though he had been plaintiff's own witness in the first place. Counsel for plaintiff asked the defendant as to whether he knew of anyone who had taken care of Lyman during his lifetime, except plaintiff, to which he answered there was one, a Mr. Kime. Thereupon the following questions and answers appear in the record:

"Q. He was a minister, ordained minister in the Seventh Day Adventist Church?

"Mr. Allen: I object to that as immaterial, your Honor, having no bearing whatever on this case.

"The Court: It might have a bearing to show that there was nobody else out there. If it does, I don't know.

"Mr. Allen: What does the occupation of this person who was out there have to do with whether he was there and rendered any services or not?

"Mr. Fickett: We want to identify who the man was.

"The Court: It is identification of the party who was there, that is all I can see. Objection overruled."

It thus appears that counsel for plaintiff, over the objection of defendant, brought out the fact that Kime was a member of the Seventh Day Adventist Church. This, of itself, at this stage of the record was not improper, if nothing further had followed, for Kime was not yet a witness, nor did it appear that the church had any interest whatever in the result of the case. The next thing that appears in the examina-

tion, material to the question we are considering, is found in the following language:

"Mr. Fickett: Q. Now, Mr. Tucker, you are an official of the Seventh Day Adventist Church, are you not? A. No, sir.

"Q. You have been in the past? A. Yes, sir.

"Q. What has been that official capacity?

"Mr. Allen: I object to this line of examination as having absolutely no bearing on the issues in the case.

"The Court: I don't see how it has any bearing on the issues. Objection sustained."

Then followed this colloquy:

"Mr. Fickett: Q. The Seventh Day Adventist Church and its various branches is the principal beneficiary of Mr. Lyman's estate, is it not?

"Mr. Allen: Just a moment. The same objection. It has no bearing whatsoever.

"Mr. Fickett: I want to be heard on it before your Honor rules.

"Mr. Allen: It doesn't make any difference who is beneficiary.

"The Court: I will give you that opportunity.

"Mr. Allen: I would like to have the jury excluded.

"The Court: (in absence of jury). During the examination of the jurors on their *voir dire* I was wondering about the questions in respect to the feelings of the jurors in religious matters. It dawned on me that probably this very thing would happen, come up in the evidence. That was the only basis for the examination that I could see; and it has always been my idea that the motives surrounding an act are admissible evidence in order to determine the fact of good faith—not, as Mr. Fickett said, it would be conclusive, but it can be considered along with the other evidence in the case.

"I have before me here Jones on Evidence, and it seems to hold:

" 'To state the rule in another form, when the motive of a witness in performing a particular act or in making a particular declaration becomes a material issue in a cause or reflects important light upon such issue, he may himself be sworn in regard to it, not-

withstanding the diminished credit to which his testimony may be entitled as coming from the mouth of an interest— witness.'

"That is just one of the rules here. I think, therefore, Mr. Allen that I will have to overrule the objection."

It is evident from this last quotation that defendant objected to the terms of the will being brought into the case; that the matter was fully argued by both counsel; and that the court finally admitted it, apparently on the theory that if the will left a large portion of the estate to the Seventh Day Adventist Church, and if some of the witnesses for the defendant were members of that church, the whole matter might be submitted to the jury as affecting the credibility of the witnesses. This, as we have pointed out, was error under our constitutional provision. Counsel for plaintiff then continued with the witness:

"Q. You are a member of the Seventh Day Adventist Church? A. Yes.

"Q. And you visit with the territorial leaders when they come here to Tucson from the various districts of the church?

"Mr. Allen: I object to that as immaterial.

"The Court: Objection overruled. You may answer the question."

We think that so far counsel for defendant had properly presented his objections to the introduction of any evidence concerning the contents of the will of Lyman, in so far as it referred to the Seventh Day Adventist Church, and to the questioning of witnesses as to their membership in that church, so that it might be taken advantage of on appeal. But was this afterwards waived by the defendant? The next time the matter was referred to was on the cross-examination of defendant's witness Marguerite Williams, in the following manner:

"By Mr. Fickett: Q. Are you a member of the Seventh Day Adventist Church? A. I am.

"Mr. Allen: I object to that. Well, never mind.

"The Court: Overruled.

"A. I am."

It is urged that this was a waiver by defendant of the objection. In view of what we have previously pointed out, we think it cannot be so considered. It must be remembered that the whole issue had evidently been argued out thoroughly before the court, and that the court had stated specifically that evidence of this kind was admissible. It is the rule that where an objection to a certain class of evidence is distinctly made and overruled, the objection need not be repeated to the same class of evidence subsequently received, although the evidence is given by or question asked of another witness. In other words, the objection is treated as a continuing one. 64 C. J. 179, and cases cited. In the case of *Hintz* v. *Wagner,* 25 N. D. 110, 140 N. W. 729, 735, the court said:

"Every practicing attorney knows that constantly interposing objections and repeating them and calling for a ruling of the court on the admission of answers to nearly every question prejudices the jury against the party making the objections. Courts are not required to listen to and decide repetitions of the same objection when wholly unnecessary to protect the rights of a party."

We think, therefore, that the failure on the part of counsel for defendant to make any further objections to questions asked of witnesses as to their affiliation with the Seventh Day Adventist Church, or as to the contents of the will of deceased, does not waive his objections previously made and that they were considered at the time by the court and by all counsel as applying to all questions of that nature. This appears further when the witness Brown was asked whether he did not know that Lyman's will con-

tained five specific bequests to the Seventh Day Adventist Church, those extracts from the will being read in detail. The following statements by counsel for plaintiff and defendant appear in the record:

"Mr. Allen: If your Honor please, I wish to make the same objection I made to the original question concerning the provisions of the will and the beneficiaries thereunder, as being absolutely immaterial to the issues in the case.

"Mr. Fickett: Your Honor ruled on that yesterday and overruled it.

"Mr. Allen: That is correct. I am preserving the record. I believe I have a right to."

It is apparent that there was no waiver, but that both counsel for plaintiff and defendant agreed, in substance, that there was no necessity for further objection since the court had already ruled on the questions involved. We then find that counsel for defendant, on redirect examination, asked of the witness Brown as follows:

"Q. You were questioned here concerning your attitude towards this case and the reasons therefor. Does the fact that you are connected with the Seventh Day Adventist Church have anything to do with your attitude toward this matter? A. Not a bit in the world."

It is urged that this was a waiver by defendant of any error by the court in overruling his objections to testimony of this nature, for the reason that he himself injected the same issues into the case. The issues had originally been brought in by plaintiff for the obvious purpose of discrediting defendant's witnesses on account of their membership in the church, and the question asked on redirect examination was to show that such membership would not affect their testimony. We think the proper rule under the circumstances in this case is well set forth in *Cathey* v. *M. K. & T. R.*

370

*Co. of Texas,* 104 Tex. 39, 133 S. W. 417, 419, 33 L. R. A. (N. S.) 103, in the following language:

"It would indeed be a strange doctrine, and a rule utterly destructive of the right, and all the benefits of cross-examination, to hold a litigant to have waived his objection to improper testimony because by further inquiry he sought on cross-examination to break the force or demonstrate the untruthfulness of the evidence given in chief, in the event, as would most usually occur, that the witness should on cross-examination repeat or restate some or all of his evidence given on his direct examination."

And the same rule should be applied to redirect examination. This question was not a waiver of the objections previously made. Thereafter counsel for plaintiff asked the same question as to the church membership of two other witnesses for defendant. It is true that no formal objection to these questions was made by counsel for defendant. For the reasons which we have stated, we think it was not a waiver of the objection. After all this evidence had gone in, counsel for defendant did ask of one of his own witnesses, who had not previously been questioned by plaintiff, as to his membership in the Seventh Day Adventist Church, as follows:

"Mr. Allen: Q. During the time that you knew him were you a member of the local Seventh Day Adventist Church? A. Yes sir.

"Q. Your acquaintanceship with Mr. Lyman in anywise incident to your membership in that church?

"Mr. Fickett: I object to that as immaterial and irrelevant.

"The Court: Overruled.

"The Witness: What was the question?

"Mr. Allen: Q. Was your acquaintanceship with Mr. Lyman in anywise incident to your membership in that Church? A. No, I don't think so.

"Q. Just purely a personal acquaintance? A. Yes."

We think, however, in view of all that had gone before previously, it would be stretching the rule

too far to say that this was a waiver of all the objections so strenuously and repeatedly made by counsel for defendant, and overruled by the court. We hold, therefore, that the evidence in regard to the will of deceased leaving the bulk of his property to the Seventh Day Adventist Church, and that a number of defendant's witnesses were members of that church, was improperly admitted; that it was first brought into the case by counsel for plaintiff over the strenuous objection of counsel for defendant; and that in view of the repeated rulings of the court such objections were not waived by defendant.

There remains but one question, and that is whether, notwithstanding the palpable error, such error is of a reversible nature. We have held repeatedly that under article 6, section 22, of the Constitution, this court will not reverse a case for technical error when on the whole case it appears that justice has been done, and have stated that the test of technical error is whether the error has led, wholly or in part, to the verdict which was reached. *Lawrence* v. *State,* 29 Ariz. 318, 241 Pac. 511. We are of the opinion that the errors we have been discussing were of such a nature that they, in all probability, prejudiced the jury in passing on the real issues which they were to try. The evidence was in sharp conflict as to the services rendered and the reasonable value thereof. The verdict returned was in excess of the amount which, under the most favorable view of the evidence, was legally permissible, so that the court was obliged to direct two *remittiturs* to bring the judgment within legal bounds. It appears to us that the jurors must, though doubtless unconsciously, have had their judgment affected by their emotional reaction to the question of whether an old man who had helped a friend in adversity should receive part of his estate, or whether it should pass to the Seventh Day Adventist Church,

rather than by a calm and dispassionate consideration of the evidence pertinent to the legal issues.

We regret extremely to be compelled to reverse the judgment, but it is too dangerous a precedent to allow cases to be tried with a background like the present one, which was improperly brought in at the solicitation of plaintiff, and over the protest of defendant.

The judgment of the superior court is reversed, and the case remanded for a new trial.

McALISTER, C. J., and ROSS, J., concur.