566 P.2d 1340

**STATE of Arizona, Appellee,**

v.

**James Edward STONEMAN, Appellant.**

**No. 3741.**

Supreme Court of Arizona,
In Banc.

July 14, 1977.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer III, Chief Counsel, R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Edward C. Voss, Deputy Public Defender, Phoenix, for appellant.

STRUCKMEYER, Vice Chief Justice.

This is an appeal from a verdict and judgment of guilty of the crime of murder in the first degree, a violation of A.R.S. §§ 13–451 and 13–452, with a sentence thereon of life imprisonment.

On December 29, 1975, between 7:00 p. m. and 7:30 p. m., Agnes T. Cota went to the Saddle Horn Lounge in Phoenix, Arizona. She was joined by the defendant and they left the lounge together at about 10:30 p. m. They were later seen at the Horseshoe Lounge, which they left at about 11:45 p. m. The body of Agnes Cota was found at about 7:45 a. m. on December 30, 1975 in the vicinity of 23rd Avenue and Durango Street. She apparently had been sexually assaulted and strangled. Fecal matter was found at the scene and there was testimony by the pathologist that in 90% of the cases where there is strangulation, there is loss of feces. Fecal matter also was found on a pair of brown levi-type trousers taken from a clothes hamper at the defendant's place of residence. Other testimony was to the effect that it was not possible to differentiate between human and animal feces.

At the first trial, the jury failed to agree and a mistrial resulted. At the second trial, in August of 1976, the defendant was found guilty.

At a hearing held to suppress evidence, the trial court decided that a statement by defendant to the effect that he wanted counsel was inadmissible at the trial. The following, however, occurred. On cross-examination at the trial by defense counsel, Detective Marcus Aurelius was asked what verbal response the appellant gave when told a woman had been murdered.

"A. 'Oh, my God,' and 'Why would I do a thing like that?'

Q. Now, did he say those one right after the other?

A. No.

Q. Did he say that after you advised him that you were placing his [sic] under arrest for murder?

A. No.

Q. Did he say anything else other than, 'Oh, my God' and, 'Why would I do a thing like that', after you told him the woman had been murdered?

A. Yes.

Q. And what did he tell you?

A. He wanted to speak with his family and he wanted—he thought he wanted an attorney and that he understood what I had read to him."

The answer of the police officer was responsive to the defendant's question. When testimony is responsive and initiated by defense counsel's questioning, any error, if there be error, is invited and is not grounds for reversal. *State v. Fish,* 109 Ariz. 219, 508 P.2d 49 (1973); *State v. Maggard,* 104 Ariz. 462, 455 P.2d 259 (1969).

Defendant urges that there were three instances of prosecutorial misconduct during closing argument. In two of the three matters no objection was made to the argument. The right to have those matters reviewed on appeal is waived when the error is not fundamental. *State v. Owens,* 112 Ariz. 223, 540 P.2d 695 (1975).

The defendant's third objection was that the prosecuting attorney in his final argument showed to the jury tennis shoes of different manufacturers which had not been introduced in evidence at the trial. A pair of defendant's tennis shoes had been introduced. The tennis shoes were shown to the jury to compare the soles with the soles of defendant's tennis shoes and thereby to buttress the State's argument concerning the footprints found at the scene of the crime. No objection was made when the prosecutor showed the tennis shoes to the jury nor to his line of argument concerning them. An objection was made at the end of the closing argument.

We have examined the record with respect to the argument which the prosecution made concerning the tennis shoes and do not think that there was a reasonable possibility that the verdict would have been different had the State's argument concerning the tennis shoes not been made. *State v. Childs,* 113 Ariz. 318, 553 P.2d 1192 (1976).

Defendant's last claim of error is that Detective Aurelius was allowed to testify that a pair of brown trousers which were stained with fecal matter belonged to defendant. Detective Aurelius' testimony concerning the ownership of the pants came about in this manner. At the first trial the defendant was questioned regarding the brown trousers:

"Q. I show you Exhibit No. 83 [the brown trousers]. Can you explain to the jury how this fecal material got on the cuffs of your pants?"

The defendant answered that it was probably at a livestock exhibit which he went to on Saturday, a few days after the night on which the offense occurred. He did not make any disclaimer that Exhibit No. 83, which had previously been identified as having been taken from his residence pursuant to a search warrant, was not his pants.

He was also asked this question:

"How long prior to the time of your arrest did you wear the pants to the Arizona Livestock Show?"

Again he answered the question, but again did not disclaim the clear implication of the question that the pants belonged to him.

During the second trial, the court, at the instigation of defense counsel, ruled that it did not think the transcript of the former trial or the fact that there had been a previous trial should be placed before the jury. The court concluded from testimony at the first trial that Detective Aurelius could testify in the second trial that the brown pants, Exhibit 83, belonged to the defendant, and that on cross-examination Detective Aurelius could state he knew this from previous testimony of the defendant. After these rulings, Detective Aurelius did testify at the second trial that he knew the trousers belonged to the defendant, James Stoneman.

Contrary to the trial judge's concern, the defendant's testimony at his first trial was clearly admissible at his second trial. In *State v. Thomas,* 78 Ariz. 52, 275 P.2d 408 (1954), we held that a judicial confession or admission connected with the crime made in court is admissible, quoting from *West v. State,* 24 Ariz. 237, 208 P. 412 (1922):

> " 'It is well settled that any statements made by a defendant prior to his trial, having the effect of an admission, connecting him with the act, and likewise a confession that he committed the act, whether judicial or extrajudicial, if made without coercion, duress, or hope of reward, may be used by the state in evidence as a part of its original case upon the defendant's trial for the offense charged.' " 78 Ariz. at 66, 275 P.2d at 418.

See also Federal Rules of Evidence, Rule 801(d)(2).

The testimony of Detective Aurelius was, of course, an opinion concerning the force of the testimony given at the first trial. But the trial court was first led into error by the defendant's objection to disclosure of a former trial. Then after Detective Aurelius testified that the pants belonged to the defendant, defense counsel had the opportunity to show the jury by further examination of Detective Aurelius why he was of

that opinion without revealing that there had been a previous trial. Having chosen to accept the testimony as given rather than disclosing why Detective Aurelius concluded the brown pants were the defendant's, we hold there was a clear waiver of any error.

Further, it is clear that what occurred was harmless beyond a reasonable doubt. As pointed out, the trousers were found in the clothes hamper in the defendant's place of residence pursuant to a duly issued search warrant. Even at the second trial at which the defendant testified, he did not deny that the trousers were his, testifying that the trousers looked like a pair he owned.

Judgment affirmed.

HAYS, HOLOHAN, and GORDON, JJ., concur.

CAMERON, Chief Justice, dissenting.

I regret that I must dissent.

The pair of brown levi-type trousers was found in a hamper where the defendant and others resided. It was an important item of evidence linking the defendant to the crime. At the first trial, a detective testified that he had been told that the brown trousers belonged to the defendant. Prior to the second trial, the defendant made a motion in limine to preclude the detective from again giving this hearsay testimony. The trial court granted the motion in limine regarding the hearsay testimony but allowed the detective to interpret for the jury the testimony of the defendant at the first trial. The questioning of the defendant on cross-examination at the first trial was as follows:

> "Q I show you Exhibit No. 83, which was the brown trousers. Can you explain to the jury how this fecal material got on the cuffs of your pants?
>
> \* \* \* \* \* \*
>
> "A I was at the Arizona Livestock Show, I believe it was Saturday. I am not sure which pair of pants I was wearing on that date, though.
>
> \* \* \* \* \* \*

"Q How long prior to the time of your arrest did you wear the pants to the Arizona Livestock show?

\* \* \* \* \* \*

"A I believe that it was on Saturday, the same day I talked to Mr. Aurelius.

"Q Where was that Arizona Livestock Show?

"A At the Coliseum located at 19th Avenue and McDowell.

"Q Do you specifically remember the incident that occurred when you got the fecal material on your pants?

"A No, sir, I do not."

In allowing the officer to testify as to the ownership of the trousers based upon defendant's testimony at the trial, the court stated:

"I feel that there is sufficient identification that was made at the trial, although it could have been a little bit clearer for the Officer to indicate if questioned on this point the ownership of the trousers. I will permit you, Mr. DeMars, to ask the witness where the trousers were obtained, who was living at that residence, if he knows who the trousers belonged to, and stop your questioning there."

The officer therefore answered at the second trial as follows:

"Q Now, do you know who those brown trousers belong to?

"A Yes, I do.

"Q Who?

"A Mr. Stoneman.

"Q James Stoneman?

"A Yes."

The defendant contended, and I agree, that by this procedure the court usurped the jury's function as the trier of fact and defendant's right to trial by jury was violated.

Generally, a defendant who has testified in his own behalf in a criminal prosecution may have that testimony used against him on retrial after a remand or new trial has been ordered, *Indian Fred and Hostein Set Chizzy Bega v. State,* 36 Ariz. 48, 282 P. 930 (1929); *London v. Patterson,* 463 F.2d 95 (9th Cir. 1972), and this is true even though the defendant elects not to take the stand and testify in his own behalf at the second trial. *State v. Wilson,* 57 N.J. 39, 269 A.2d 153 (1970). See Annotation, 5 A.L.R.2d 1404, 1411.

But the jury at the second trial still must determine the facts to be drawn from said prior testimony; that is the function of the jury as the trier of fact and is part of defendant's right to trial by jury as prescribed by Art. 2, Sec. 23 of the Constitution of Arizona. We have stated:

"\* \* \* It is, we believe, the universal rule for the court to pass on and decide all questions of law that may arise in the course of the trial, and for the jury to determine the questions of fact. The rule of law requires the court to determine the issues of the case and to regulate the introduction of evidence offered to prove or disprove such issues, and to submit to the jury for their determination the issues having support in the evidence \* \* \*." *Singh v. State,* 35 Ariz. 432, 445, 280 P. 672, 676 (1929), 67 A.L.R. 129, 136.

To allow the witness to draw the factual inferences for the jury is a violation of defendant's right to have the facts determined by the jury, and the procedure followed here was a violation of defendant's right to trial by jury. Art. 2, Sec. 23, Arizona Constitution.

I also believe that the drawing of an inference from previous facts and allowing that inference to be presented to the jury as a fact is an indirect comment on the evidence which the judge is forbidden to do by Art. 6, Sec. 27 of the Constitution of Arizona.

"\* \* \* A judge comments on the evidence when he expresses to the jury his opinion of what the evidence shows or does not show. (citation omitted) The inferences derived from the evidence are peculiarly within the jury's province. An invasion of this would constitute error where prejudicial. *Gibbs v. State,* 48 Ariz. 25, 58 P.2d 1037 (1936)." *State v.*

*Godsoe,* 107 Ariz. 367, 370, 489 P.2d 4, 7 (1971).

By allowing the witness to state his conclusions drawn from defendant's prior testimony that the trousers were defendant's, the court usurped the province of the jury to determine if the trousers were in fact the defendant's. It is of no moment that had the defendant's testimony been read to the jury they would, in all probability, have drawn the same conclusion. It is the jury's function to draw that conclusion not the judge's.

Because the evidence in this case is not even, at its strongest, conclusive of defend-ant's guilt, I cannot say that the admission of the officer's testimony was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).