606 P.2d 406

**STATE of Arizona, Appellee,**

v.

**James J. MARVIN, Appellant.**

No. 4645.

Supreme Court of Arizona,
En Banc.

Jan. 7, 1980.

Rehearing Denied Feb. 13, 1980.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

Robert Duber, II and Donald Premeau, Globe, for appellant.

HAYS, Justice.

James J. Marvin appeals from convictions of first-degree murder and aggravated battery. He was sentenced to life in prison on the murder charge and four to five years, to run consecutively to the life term, on the battery conviction. We have jurisdiction pursuant to A.R.S. § 13–4031 and affirm the convictions and sentences.

Appellant raises the following issues:
1. Was the prosecutor guilty of misconduct in closing arguments?
2. Did the prosecutor's reference in closing arguments to potential harm to others constitute reversible error?
3. Did the prosecutor commit reversible error when he referred to the impact of the decedent's death on decedent's family?
4. Was the prosecutor's statement of law concerning premeditation correct?
5. Was the prosecutor guilty of misconduct when he referred to appellant's "raping" his ex-wife?
6. Did the court err in not allowing examination of appellant with regard to his religious beliefs?
7. Did the court err in refusing to give a requested jury instruction?
8. Did the court err in rejecting an affidavit by defense counsel which sought to impeach the verdict?

## I. PROSECUTORIAL MISCONDUCT IN CLOSING ARGUMENTS

Defense counsel did not lodge a timely objection to the comment with which he now takes issue. Since the comment does not constitute fundamental error, appellant has waived his right to complain. *State v. Stoneman*, 115 Ariz. 594, 566 P.2d 1340 (1977).

## II. REFERENCE TO POTENTIAL HARM TO OTHERS

Appellant objects to the following comment by the prosecutor in closing arguments:

Mr. Duber [defense counsel] has asked you to find Mr. Marvin guilty of voluntary manslaughter, you might as well sentence to death anybody who ever touched Mrs. Marvin, as well as sentence to death Gerry Marvin.

 We have frequently held that in closing arguments, counsel may draw reasonable inferences from the evidence elicited. Considering the fact that appellant had testified that on several occasions he had threatened to kill his wife and anyone he found with her, we hold that the prosecutor's comment was permissible as a reasonable inference from the evidence. *State v. Jaramillo*, 110 Ariz. 481, 520 P.2d 1105 (1974); *State v. Gonzales*, 105 Ariz. 434, 466 P.2d 388 (1970).

### III. IMPACT OF VICTIM'S DEATH ON HIS FAMILY

 Appellant contends that the following comment by the prosecutor warranted a mistrial:

There's only one person and one group of people that I feel sorry for. That's the family of this man right here that has been ignored. The person who can't see his family any more. Can't see his daughters, who can't see his grandchildren, and his daughters and grandchildren can't see him.

Counsel are allowed great latitude in closing arguments, even to the extent of making emotional statements. *Gonzales, supra.* The comment, while appealing to the jury's sympathy, was not so improper as to mandate reversal. In view of the overwhelming evidence of appellant's guilt, it cannot be said that the jury was thereby probably influenced to return a guilty verdict because of the remarks. Finally, defense counsel did not timely object and thus waived the point for appeal purposes. *Stoneman, supra.*

### IV. DEFINITION OF PREMEDITATION

 Taking issue with the prosecutor's distinction between first- and second-degree murder as being the element of premedita-

tion, appellant asserts that both premeditation and deliberation are required to convict of first-degree murder and, consequently, the prosecutor misstated the law to the jury.

We do not agree. In *State v. Childs*, 113 Ariz. 318, 322, 553 P.2d 1192, 1196 (1976), we specifically held that the elements of wilfulness and deliberation are implied in the definition of premeditation. The prosecutor's statement, therefore, was a correct statement of the law regarding the distinction between first- and second-degree murder.

Moreover, the judge's instructions to the jury clearly distinguished the concepts of "willfulness," "deliberation" and "premeditation":

"Willful" means intentional.

"Deliberate" means decided as the result of careful thought.

"Premeditated" means resolved in the mind beforehand.

The intent to kill must be the result of deliberate premeditation. There is no prescribed period of time which must elapse between the formation of the intent to kill and the act of killing.

In summary, the unlawful killing of a human being with malice aforethought done willfully and with deliberation and premeditation is murder of the first degree. The unlawful killing of a human being with malice aforethought, but without deliberation or premeditation, is murder of the second degree.

Any possible confusion concerning the concept of premeditation was certainly cured by the court's instructions. *State v. Purcell*, 117 Ariz. 305, 572 P.2d 439 (1977). We find no error.

### V. REFERENCE TO "RAPE"

As basis for reversal on this point, appellant calls our attention to the following dialogue between the defendant and the prosecutor:

Q. Isn't it true that in addition to beating her up that you raped her twice in that period of time in that trailer court?

A. It is true that on Saturday morning I forcibly had sex with her, yes.

[at this point defense counsel moved for a mistrial, which was denied.]

Q. So you object to the term rape, but you did forcibly have sex?

A. Use the term rape if you want to.

One of the main theories advanced by the defense was that appellant and his ex-wife had reconciled and were having relations as man and wife, thus giving rise to sufficient provocation to reduce the charge from murder to manslaughter. In cross-examining appellant's ex-wife, defense counsel probed into the relationship during June, 1977, when plans for a divorce had been laid and appellant had agreed to move out of the house. Defense counsel attempted to show that appellant and his ex-wife reconciled before and after the divorce in spite of a formal divorce in August, 1977.

█ Although it was improper in a technical legal sense for the prosecutor to refer to the acts of forcible intercourse as "rape," since the parties were not then divorced, appellant admitted that the acts were consummated against his wife's will, and the prosecutor's line of questioning may fairly be regarded as in response to the defense's attempt to demonstrate reconciliation and thereby establish provocation. We have recognized that improper remarks by the prosecution, if they are provoked by opposing counsel or are in retaliation for certain statements, are not grounds for reversal unless they are so prejudicial as to constitute reversible error. *Jaramillo, supra; Post v. State*, 41 Ariz. 23, 15 P.2d 246 (1932). In view of appellant's admission, the fact that defense counsel had opened the door to this line of questioning, and the otherwise abundant evidence of guilt, we cannot say that the remarks were so prejudicial as to require reversal.

## VI. EXCLUSION OF RELIGIOUS BELIEFS

█ Appellant complains that testimony concerning his Mormon beliefs was improperly excluded by the trial judge. We do not agree.

Rule 610 of the Rules of Evidence and Art. 2, § 12 of the Arizona Constitution state, in pertinent part:

Rule 610: Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature his credibility is impaired or enhanced.

Art. 2, § 12: [N]or shall any person be incompetent as a witness or juror in consequence of his opinion on matters of religion, *nor be questioned touching his religious belief in any court of justice to affect the weight of his testimony.* (Emphasis added.)

The testimony concerning religious beliefs was intended to bolster appellant's credibility relative to the theory of provocation and lack of premeditation. Since the state cannot assail a witness' credibility because of religious beliefs or lack thereof, neither may a witness seek to enhance his testimony in reliance thereon. *See Tucker v. Reil*, 51 Ariz. 357, 77 P.2d 203 (1938); *State v. Estabrook*, 162 Or. 476, 91 P.2d 838 (1939).

## VII. JURY INSTRUCTION

Appellant complains that it was error to refuse to give the following instruction:

If you find the defendant, James Marvin, was romantically or imotionally [sic] involved with Geraldine Marvin, the discovery of her in bed with the victim, while in the heat of passion and contemporaneous with the discovery is sufficient to warrant a finding of lack of malice and reduce the charge to voluntary manslaughter from murder.

Appellant cites *State v. Harwood*, 110 Ariz. 375, 519 P.2d 177 (1974), as supportive of this instruction. We find, on the contrary, that the manslaughter instruction in *Harwood, supra*, correctly states the law and in no way lends support to appellant's proposed instruction.

█ The instruction requested by appellant substitutes the defendant for the proverbial "reasonable man" and urges the jury to find adequate provocation if they believe this particular defendant acted in

the heat of passion regardless of whether the ordinary person in the same situation would have so acted. The proposed instruction is a misstatement of the law with respect to provocation.

In *Harwood, supra,* we quoted with approval language from the California Supreme Court case of *People v. Danielly,* 33 Cal.2d 362, 377, 202 P.2d 18, 27, *cert. denied,* 337 U.S. 919, 69 S.Ct. 1162, 93 L.Ed. 1728 (1949):

[T]his heat of passion must be such a passion as would naturally be aroused in the mind of an ordinarily reasonable person under the given facts and circumstances, and . . . consequently, *no defendant may set up his own standard of conduct* and justify or excuse himself because in fact his passions were aroused, unless further the jury believe that the facts and circumstances were sufficient to arouse the passions of the *ordinarily reasonable* man. (Emphasis added.)

The trial judge properly rejected the instruction and correctly instructed the jury concerning provocation and manslaughter. We find no error.

## VIII. JUROR MISCONDUCT

Finally, appellant urges that the trial court improperly refused a motion for post-conviction relief based on previously unknown and extremely remote relationships of two jurors to the victim. The affidavits in support of this motion are those of defense counsel and concern the unsworn statements of third parties to counsel. Consequently the affidavits are hearsay.

In *State v. Cookus,* 115 Ariz. 99, 106, 563 P.2d 898, 905 (1977), we quoted with approval the following language from *Maryland Casualty Co. v. Seattle Electric Co.,* 75 Wash. 430, 437, 134 P. 1097, 1099–1100 (1913), with respect to hearsay affidavits challenging a jury verdict:

Whatever the breadth of the application of the rule as to the inadmissibility of the affidavits of jurors to establish their misconduct, it is almost universally held that affidavits of third persons as to unsworn statements of jurors tending to show either the fact of misconduct or its effect upon the verdict cannot be received for any purpose because they are of a purely hearsay character.

Since appellant's contentions are not supported by competent evidence, they are not properly before us.

Pursuant to A.R.S. § 13–4035, we have searched the record and find no fundamental error. The judgments of conviction and the sentences are affirmed.

STRUCKMEYER, C. J., and HOLOHAN, V. C. J., concur.

GORDON, Justice (concurring in part, dissenting in part):

Although I concur with the majority on all other issues in this case, I dissent from its decision on the following remark made by the prosecutor during his rebuttal closing argument:

"Mr. Duber [defense counsel] has asked you to find Mr. Marvin guilty of voluntary manslaughter. If you find Mr. Marvin guilty of voluntary manslaughter you might as well sentence to death anybody who ever touched Mrs. Marvin, [Gerry Marvin, appellant's ex-wife] as well as sentence to death Gerry Marvin."

This language directs the jurors' attention away from the real issue in the case by appealing to their fears and emotions. It seeks to influence the jurors to find defendant guilty of first degree murder rather than voluntary manslaughter by implying that voluntary manslaughter has a minimal sentence. The jurors are invited to prevent future crimes by the defendant by finding him guilty of first degree murder, with its impliedly heavier sentence, even though evidence of guilt as to this crime may not be beyond a reasonable doubt.

This type of argument injects into the minds of jurors matters with which they should not be concerned in deciding guilt. As this Court stated in *State v. Makal,* 104 Ariz. 476, 477–78, 455 P.2d 450, 451–52 (1969) cert. denied, 404 U.S. 838, 92 S.Ct.

128, 30 L.Ed.2d 71 (1971), quoting *Farris v. Commonwealth*, 209 Va. 305, 163 S.E.2d 575, 577 (1968):

" 'When evidence introduced is not of a subsequent act but of a possible future act, it does not shed any material light on an accused's mental state at the time of the offense charged. It can only have relation to the possibility or even probability that an accused will in the future commit a criminal act or will be a danger to society, and such evidence tends to destroy by fear the recognized defense of not guilty by reason of insanity.' "

In my dissent in *State v. Garrison*, 120 Ariz. 255, 259–260, 585 P.2d 563, 567–568 (1978), I stated, and I now reiterate, that the prejudicial effect is the same regardless of whether the prosecutor urges the jury to disregard the state's burden of proof or the defendant's insanity defense.

The majority finds the statement proper as a reasonable inference from defendant's testimony that he had threatened to kill his wife and anyone he found with her, citing *State v. Jaramillo*, 110 Ariz. 481, 520 P.2d 1105 (1974) and *State v. Gonzales*, 105 Ariz. 434, 466 P.2d 388 (1970). I believe that the reasonable inferences from the evidence, which are permissible in closing argument, must relate to the *crime charged*, not as in this case to potential future crimes. The cases cited do not hold otherwise.

The statement of the prosecutor went beyond the pale of legitimate argument and into the realm of prejudicial error that denied defendant the fair trial to which he was entitled. This Court should not countenance and thus encourage this example of overzealous prosecutorial activity. Rather, it should strongly disapprove of all such conduct, both to preserve defendants' right to a fair trial, and to put prosecutors on notice that such actions will not be tolerated. For these reasons, I would reverse.

CAMERON, Justice (concurring):

I concur with Justice GORDON.