[Crim. No. 2417. In Bank.—March 28, 1922.]

THE PEOPLE, etc., Plaintiff and Respondent, v. AUGUS-TUS M. ESTES, Defendant and Appellant.

[1] CRIMINAL LAW—MURDER—MALICE—EVIDENCE.—In this prosecution for murder it is held that no error occurred on the trial which could have affected the sufficiency of proof of malice to justify the verdict.

[2] ID. — CREDIBILITY OF WITNESSES — STATEMENT OF COURT. — In a prosecution for murder a remark of the court, in overruling an objection to the competency of a witness for the defense who was asked to identify a certain signature from his familiarity with the handwriting of the alleged signer, that "Probably his opinion is as good as some of the experts we will get here," cannot be said to have had a prejudicial effect on the jury, even

though the defendant rested his case largely upon the opinion of experts, both prosecution and defense having introduced testimony of experts.

[3] Id.—Notes of Autopsy Surgeon.—In such a case there was no prejudice, although error, in permitting the surgeon who held the autopsy on the deceased to testify from his notes and in refusing to allow defendant's counsel to inspect the same and examine the witness regarding them before allowing their use as memoranda, where all the witness testified to from such notes was as to the location and nature of the wounds upon the person of the victim and there was no dispute that the wounds, wherever located, caused death.

[4] Id.—Evidence.—Error in the admission of incompetent evidence of an uncontradicted and conceded fact cannot be held to justify a reversal on appeal.

[5] Id.—Evidence—Caliber of Bullet.—There was no error in such a case in allowing the autopsy surgeon to testify, without qualifying as to his competency, to the caliber of the bullet found in the wound of the deceased, where he had testified as to the caliber prior to the direct question and there was no objection or motion to strike out his former testimony and the fact was uncontradicted and susceptible of adverse proof, if any question existed.

[6] Id.—Cross-examination — Sister of Deceased. — There was no prejudicial error in such a case in not permitting counsel for defendant to pursue his cross-examination of the sister of the deceased, on account of her taking notes at the trial, to show her interest and bias in the case, or in a remark of the judge, "Why shouldn't she have an interest in the case?"

[7] Id.—Evidence—Cross-examination—Letters.—In such a case the introduction by the prosecution of a letter written by defendant did not justify the production on cross-examination of other correspondence not connected with the letter in evidence, although defendant had a right in his own case to call for and introduce other correspondence relative to the case.

[8] Id.—Insanity—Evidence—Appearance of Eyes of Defendant. In such a case it was not error to sustain an objection to a question on cross-examination of a witness for the prosecution, who was present at the shooting, as to whether he noticed the eyes of the defendant at that time and if they did not appear to him "as the eyes of an insane person," and if there was not "something abnormal—something unusual about the eyes of this man" that particularly attracted his attention, the witness having been permitted to testify that the eyes were glazed and the pupils greatly dilated, but not being qualified to give an opinion as to the significance of these conditions.

[9] ID.—OPINION OF WITNESS AS TO SANITY—In such a case a witness who concededly did not qualify as an expert so as to justify admitting his opinion as to the sanity of the defendant upon a hypothetical statement of facts, and who had no intimate acquaintance with the defendant, was properly permitted to testify to all the facts relating to defendant's appearance and actions while under his observation, but the court properly refused to allow him to give his opinion as to the defendant's sanity.

[10] ID.—HYPOTHETICAL QUESTION—ADJOURNMENT TO PREPARE.—In such a case the court properly refused to take an adjournment of the trial in order to permit counsel for defendant to prepare a hypothetical question to propound to the experts on insanity, where such a question was framed and propounded by the defense and it is not shown wherein it was not sufficient, as no error will be presumed, even if the court abused its discretion, unless it appears that the defendant failed to get a full and satisfactory opinion from his witnesses in this respect.

[11] ID.—TESTIMONY AS TO SANITY—IMPEACHMENT.—In such a case there was no prejudicial error in refusing to allow a witness for the prosecution to answer the question if he had not subsequently to his examination in chief stated to a party that the defendant might have been insane, where the witness had made a brief personal examination of the defendant three or four months after the shooting and after the trial had commenced, and testified that in his opinion at the time of said examination the defendant was sane, but at no time directly testified that defendant was sane at the time of the shooting, although he stated, upon his attention being called to certain facts introduced by the defense to prove insanity, that he did not see any evidence in the testimony that would lead him to believe that the defendant was insane, but upon cross-examination, upon a hypothetical state of facts in the case, he answered that the defendant "might have been insane according to that."

[12] ID.—INSANITY—IRRESISTIBLE IMPULSE — INSTRUCTIONS.—In such a case there was no error in giving an instruction on insanity predicated on the theory of "irresistible impulse," that, "It has been urged on behalf of the defendant that it being impossible to assign any reason for the perpetration of the offense, he must have been acting under what is called a powerful and irresistible influence or homicidal tendency. But in that connection I charge you that the circumstances of an act being apparently motiveless is not a ground from which you can safely infer the existence

---

9.  General rule as to admissibility of nonexpert opinion as to sanity and mental capacity, note, 38 L. R. A. 721.

12.  Irresistible impulse as an excuse for crime, notes, Ann. Cas. 1912A, 36; Ann. Cas. 1917C, 609; 18 L. R. A. 224; 27 L. R. A. (N. S.) 461; L. R. A. 1918D, 794.

of such an influence. Motives exist unknown and innumerable which might prompt the act. A morbid and restless (but irresistible) thirst for blood would itself be a motive urging such a deed for its own relief," the objection being that although the instruction correctly states the law, it assumes the commission of the homicide by the defendant, and is based upon an unwarranted statement that defendant relied upon evidence that he acted under an irresistible influence or homicidal tendency, the jury being fully informed in other instructions as to the presumptions of innocence and the necessity of proof beyond a reasonable doubt of every element of the offense charged.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank R. Willis, Judge. Affirmed.

The facts are stated in the opinion of the court.

Fred H. Thompson, Frank Karr, R. C. Gortner, W. R. Millar and C. W. Cornell for Appellant.

U. S. Webb, Attorney-General, Arthur Keetch, Deputy Attorney-General, and John W. Maltman for Respondent.

SLOANE, J.—This appeal is by the defendant from a judgment of conviction in the superior court of the county of Los Angeles of murder in the second degree.

That the defendant committed the act charged as murder in the information is established by the evidence, beyond all controversy. That is, on the sixteenth day of October, 1920, the defendant shot and killed his wife, Alena Estes, at Fifth Street and Broadway, in the city of Los Angeles.

That the killing was under circumstances constituting manslaughter or murder in the first or second degree is only disputed by evidence tendered under the plea of not guilty, for the purpose of establishing the insanity of the defendant to a degree that rendered him incapable of distinguishing between right and wrong in relation to the act resulting in the homicide.

By its verdict of guilty the jury found against the plea of insanity.

The uncontroverted facts are that the defendant and the deceased were husband and wife. That they had been living for a long time in a state of domestic infelicity and had several times separated and were living separate and apart

by reason of the desertion of the wife at the time of the homicide. They had five little children whom the husband was trying to support and who, in the periods of separation, had been consigned to the care of a children's home. The defendant attributed his wife's refusal to live with him to disloyalty on her part to the marriage relation. Whether with or without cause, he believed she was having improper relations with other men. The defendant shortly before the tragedy had attempted to induce his wife to return and live with him on account of the little children. This she refused. She claimed to be afraid of him, and there is evidence that he had on several occasions threatened her life. There is no doubt that at the time of the shooting and for some period previously the defendant was greatly depressed, extremely nervous and unbalanced, physically and mentally. The evidence does not disclose the movements of the parties immediately preceding the shooting, or how they came to be together at the time and place of the tragedy. Bystanders were first attracted by the act and noise of the shooting, which was immediately followed by the attempt of defendant to shoot himself. There was some evidence to indicate that they had met in this vicinity by appointment previously arranged with the defendant.

The evidence of acquaintances as to defendant's conduct preceding the tragedy and his depressed state of mind, together with the testimony of medical experts that in their opinion he was insane, was doubtless sufficient to have supported a finding that he was irresponsible because of insanity if such had been the verdict of the jury.

It is not questioned, however, that evidence against such degree of insanity was sufficient to support the finding of the jury that defendant was sane, implied in its verdict that he was guilty of murder in the second degree.

The only other ground of attack upon the conclusiveness of the evidence to support the verdict arises on the proof of malice sufficient to remove the case from one of manslaughter to that of murder.

This element was sufficiently supplied to sustain the verdict by evidence of the feeling existing between the defendant and his wife, his threats to kill her, and the purchase of a pistol of the caliber of the one used in the shooting on the afternoon of the evening of the tragedy.

This statement of the established facts in the case narrows a consideration of the errors assigned on this appeal to the question of a fair trial on the issues of insanity and malice.

Certain alleged errors of the trial court in admitting and excluding evidence over the objection of defendant's counsel are specified as being calculated to prejudicially influence the jury in finding against the defendant in these particulars.

We agree with the district court of appeal, from which this appeal comes to us on rehearing, that such erroneous rulings occurred, but in the light of all the evidence in the case can it be held that such errors have caused any miscarriage of justice? In other words, is there any shadow of ground for believing that had the rulings complained of been favorable to the defendant the jury could or would have been influenced thereby to a different verdict?

Taking first the question of malice, because it is most easily disposed of, the uncontroverted evidence shows that the defendant was desperately tried by his wife's conduct. He found himself unable to induce her to come back to his home. He was shown by competent and unimpeached testimony to have made threats against her life. He had on other occasions sought interviews with her which had been denied. The shooting itself was under circumstances that would imply malice. No evidence was offered excepting that alone of mental irresponsibility which would rebut the implication of malice. The evidence admitted over defendant's objections was merely corroborative or cumulative on this point. It merely emphasized what was already sufficiently proved.

The most objectionable ruling affecting the question of malice and premeditation arose on the admission of certain testimony of Inez Jewell, a sister of the murdered woman, as to a prearrangement on the part of defendant to meet his wife at the time and place of the tragedy. On the part of the prosecution this witness was asked: "Were you to meet the defendant Saturday somewhere?" The answer was, "Yes, sir." Q. "How did you make this arrangement with the defendant to meet him Saturday?" A. "Over the telephone with her," meaning with the defendant's wife. This answer in no way connected the defendant with such arrangement, and if it indicated that such an arrangement

had been reached between defendant and his wife was clearly hearsay. It should have been stricken out on defendant's motion. There was further testimony to the effect that the arrangement was that the witness and her husband were to meet the defendant on this Saturday evening, the night of the murder, at Seventh and Broadway, and that they were later to meet the wife of defendant at Fifth and Broadway.

To the question, "How did you make this arrangement with the defendant to meet him Saturday?" the witness answered, "Over the telephone with her." As evidence of an arrangement between the wife and her sister for a meeting at the time and place mentioned, this testimony was properly admitted. It was incompetent, however, to in any way connect the defendant with knowledge of or agreement to such meeting. The witness, in fact, testified that she had no talk with the defendant about the proposed meeting near the place where the tragedy occurred.

The only evidence that defendant was party to or had knowledge of such an arrangement was that the witness had been so informed by her sister over the telephone, which, as already pointed out, was hearsay and not in any way binding on the defendant.

Of course, if there was such an understanding between defendant and his wife, or if information was conveyed to the defendant of such an arrangement between the witness and his wife, it would sufficiently account for his meeting his wife at the place and time of the shooting, no matter how he heard of it. The witness further testified that she and her husband did go to Seventh and Broadway at 7:30 that evening, but failed to meet the defendant, and were at Fifth and Broadway at ten minutes after 8, but did not meet the others there. In the absence of a showing that defendant was in some way informed of the proposed rendezvous, the testimony should have been excluded. It does, however, appear by the testimony of this same witness that in a conversation with defendant after the shooting the defendant told her that he did go to Seventh and Broadway and afterward to Fifth and Broadway at the times mentioned, which would justify an inference that he had received some information of the proposed appointment. But whether the parties to the tragedy met that

evening by appointment, or on the sole initiative of the defendant, or by accident, has slight bearing on the question of malice. It is quite clear that he was seeking a meeting with his wife, and just how it was brought about is of little consequence.

Objection is also made to the ruling of the court restricting the cross-examination of the witness Runge, who testified to having sold to defendant a pistol, of the caliber of the one with which the shooting was done, on the afternoon of the fatal day. The witness had previously testified that the sale was made at 2 o'clock in the afternoon. Later he testified that it was about 3 o'clock. It developed that the defendant was on duty as a motorman on an electric car at 2 o'clock and did not leave his work until about 3, and it was sought on cross-examination to show that the witness changed his testimony as to the time of day the sale was made after learning such fact as to the time defendant quit work. Such cross-examination might better have been permitted, but the witness had at no time been positive as to the exact time of the sale, and if it was actually made to the defendant, it was entirely immaterial whether it was at 2 or 3 o'clock.

There was no pretense of disputing the purchase of the pistol by defendant. A record of the sale was introduced in evidence bearing a signature which the witness testified to be that of the defendant. Defendant's proven authentic signature was before the jury, in relation to another phase of the case, it is true, but it is hardly conceivable if any question existed as to the identity of the person to whom the pistol was sold, that the defense would not have resorted to this obvious means of testing the genuineness of the signature.

[1] We are satisfied that no error occurred on the trial which could have affected the sufficiency of proof of malice to justify the verdict.

The question of defendant's sanity is the sole issue of defense open to review on this appeal. Conceding that under the evidence a·verdict of not guilty by reason of insanity would have sufficient support in the evidence, were there any errors in the admission or exclusion of evidence which were calculated to prejudice this issue against the defendant?

[2] Appellant assigns as error a statement made by the trial judge in the presence of the jury which it is claimed tended to call in question the credibility of certain of defendant's witnesses.

Upon the examination of a witness for the defendant who was asked to identify a certain signature from his familiarity with the handwriting of the alleged signer, the court in overruling the objection to his competency made the remark: "Well, I think I will let him testify. Probably his opinion is as good as some of the experts we will get here." As appellant's case rests largely upon the opinions of experts, he thinks that this remark was calculated to have a prejudicial effect on the jury. It was doubtless inconsiderately made, and carried perhaps some sort of an innuendo unfavorable to expert testimony, but it was directed to no particular witness, and both the prosecution and the defense introduced the testimony of experts, and anyway the observation was not in its terms derogatory. The witness was held qualified to testify. There is no reason to suppose that the court questioned his entire competency and credibility and to say that his opinion was probably as good as that of other witnesses to be heard on the trial bears on its face no imputation against the reliability of the testimony of the others referred to. We cannot think that the incident, however interpreted, can have affected the action of the jury. Furthermore, no objection was made at the time. The remark was treated facetiously by counsel on both sides. Had objection been made by counsel for defendant, the court would doubtless have cured any possible error by explanation and instruction to the jury.

[3] Exception was taken to the refusal of the court to sustain defendant's objection to permitting the surgeon who held the autopsy on the slain woman to testify from his notes, and in refusing to allow defendant's counsel to inspect the same and examine the witness regarding them before allowing their use as memoranda.

Here, again, it may be conceded that the rulings of the court were erroneous. But all the witness testified to from such notes was as to the location and nature of the wounds upon the person of the victim of the shooting. There is no pretense of a dispute that the wounds, wherever located,

caused death, and their location is not otherwise material to the case. In fact, on another assignment of error in which the appellant objected to introducing in evidence the bloody garments which showed the location of the bullet holes, appellant's counsel states that "there was no question as to the course or direction of the bullet." [4] Error in the admission of incompetent evidence of an uncontradicted and conceded fact cannot be held to justify a reversal on appeal.

[5] It was also assigned as error that the court permitted the autopsy surgeon to testify, without qualifying as to his competency, to the caliber of the bullet found in the wound. The surgeon had in a former part of his testimony testified that the bullets were .25-caliber, prior to the direct question as to what the caliber was, to which this objection was taken, and there was no objection to or motion to strike out this former testimony. Moreover, this is another of the uncontroverted facts of the case entirely susceptible to adverse proof, if any question had existed.

[6] It is assigned as error that counsel for defendant was not permitted to pursue his cross-examination of the witness Inez Jewell, sister of the slain woman, on account of her taking notes at the trial, to show her interest and bias in the case; also a remark of the trial judge, "Why shouldn't she have an interest in the case?" Neither the ruling nor the remark of the judge was prejudicial. She was a sister of the dead woman. She admitted she was keeping notes of the evidence. The fact was obvious and the remark of the court merely affirmed the point of counsel's objection, that she was, from the very nature of the circumstances, an interested witness. Counsel for appellant say that the statement, "Why shouldn't she be interested?" assumed that the defendant was sane and that he killed the deceased premeditatedly. That would be a very extravagant inference. The words quoted simply assumed what counsel was asserting, that the witness was interested, and the fact did not require further proof.

[7] The letter written by defendant and introduced by the prosecution did not justify the production on cross-examination of other correspondence not connected with the letter in evidence. Defendant had a right in his own case

to call for and introduce other correspondence relevant to the case, but this he did not attempt to do.

[8] The witness W. H. Maddox, called on behalf of the people, was present at the shooting. On cross-examination he was asked if he noticed the eyes of the defendant at that time and if they did not appear to him "as the eyes of an insane person," and if there was not "something abnormal—something unusual about the eyes of this man" that particularly attracted his attention.

The sustaining of an objection to these questions is assigned as error. The objection was properly sustained. The witness was permitted to testify that the eyes were glazed and the pupils greatly dilated. He was not qualified to give an opinion as to the significance of these conditions. The witness had just testified to seeing the defendant put a pistol in his mouth and firing a bullet into his own head. The defendant, at the time the witness observed his eyes, was stretched on the sidewalk in a state of semi-consciousness. It might be taken for granted that such conditions would produce in themselves "something abnormal" in the expression of the eyes. Under the circumstances no legitimate inference of insanity could be drawn from the appearance of his eyes.

[9] Walter M. Harvey, a witness called on behalf of the defendant, testified that he had been a medical student for three years. That he had put in three thousand hours in the Receiving Hospital of Los Angeles, where he had numerous opportunities to observe insane people. He, like the witness Maddox, only saw the defendant immediately after the tragedy, and in the ambulance on the way to the hospital, when defendant was in a semi-conscious condition from self-inflicted wounds. This witness was permitted to testify to all the facts relating to defendant's appearance and actions while under his observation, but the court refused to allow him to give his opinion as to the defendant's sanity.

Appellant concedes that the witness did not qualify as an expert so as to justify admitting his opinion upon a hypothetical statement of facts, and it appears from the evidence that he had no intimate acquaintance with the defendant, and his only opportunity for observation was for a brief period when the defendant was suffering from

his injuries and practically unconscious as a result thereof. Under such circumstances the opinion of the witness was properly excluded.

Similar assignments of error relating to other witnesses are based upon the refusal of the court, after taking the testimony of the witnesses as to their observation of the appearance and conduct of the defendant, to permit them to express an opinion as to defendant's sanity. In each instance such ruling was based upon the insufficiency of the showing that the witness was qualified under subdivision 10 of section 1870 of the Code of Civil Procedure, which only authorizes the admission of such an opinion, from one not an expert on insanity, when he is shown to have been an intimate acquaintance of the defendant. The proffered testimony was properly excluded.

[10] Appellant complains of the refusal of the court to take an adjournment of the trial in order to permit counsel for defendant to prepare a hypothetical question to propound to the experts on insanity.

Such a hypothetical question was framed and propounded by the defense and it is not pointed out wherein it was not sufficient. Unless it appears that defendant failed to get a full and satisfactory opinion from his witnesses in this respect, no error will be presumed even if the court abused its discretion in refusing an adjournment.

[11] The trial court should have permitted counsel for defendant to ask the witness, Doctor Sawyer, if he had not subsequently to his examination in chief stated to one Mr. Vogel, "that the defendant might have been insane." But, under the circumstances, we cannot deem the error prejudicial.

Doctor Sawyer's testimony for the prosecution was at best indefinite and negative in its character. He had made a brief personal examination of the defendant three or four months after the date of the shooting after the trial had commenced, and testified that in his opinion at the time of such examination the defendant was sane. He at no time directly testified that defendant was sane at the time of the shooting, though he did state, upon his attention being called to certain facts introduced by the defense to prove insanity, that he did not see any evidence in the testimony that would lead him to believe that the defend-

ant was insane. On the other hand, upon cross-examination upon a hypothetical state of facts in the case the witness answered that the defendant "might have been insane according to that." Most of his testimony was directed to special acts and conduct of the defendant offered by defendant to prove insanity, which the witness stated would not necessarily, or did not in his opinion, indicate that the man was insane.

The declaration claimed to have been made to the man Vogel, if proven, would only indicate a state of speculation by the witness as to defendant's mental condition, which is apparent throughout his testimony, and in the instance above referred to was expressly stated.

The jury was fully and correctly instructed as to the law of the case, and we find no prejudicial error in the rulings of the court in granting or refusing instructions.

The appellant makes particular objection to the instruction on insanity predicated upon the theory of "irresistible impulse."

[12] That part of the instruction claimed to be unwarranted and prejudicial reads as follows:

"It has been urged on behalf of the defendant that it being impossible to assign any reason for the perpetration of the offense, he must have been acting under what is called a powerful and irresistible influence or homicidal tendency. But in that connection I charge you that the circumstances of an act being apparently motiveless is not a ground from which you can safely infer the existence of such an influence. Motives exist unknown and innumerable which might prompt the act. A morbid and restless (but irresistible) thirst for blood would itself be a motive urging such a deed for its own relief."

It is not questioned that such instruction correctly states the law, but appellant claims that the instruction assumes the commission of the homicide by defendant, and is based upon an unwarranted statement that defendant relied upon evidence that he acted under an irresistible influence or homicidal tendency.

As to the assumption in the instruction that defendant committed the homicide, the contention of appellant cannot be maintained in the light of other instructions given in which the jury was fully informed as to the presumptions

of innocence and the necessity of proof beyond a reasonable doubt of every element of the offense charged.

This particular instruction was directed to the defense of insanity, which is always based upon the hypothesis that the defendant has committed the act thus sought to be excused, and does not carry the implication that the act itself does not first have to be proved to the satisfaction of the jury beyond a reasonable doubt. Moreover, if the fact of the homicidal act was assumed as a proven fact in this case it would not be prejudicial, as it is a fact which, if not expressly admitted, was inferentially conceded throughout the trial. The commission of the crime was not a controverted fact on the trial, other than as made by the issue of insanity. There is no possible doubt under the evidence that the defendant shot and killed his wife. The sole defense rests on the degree of the crime and the defense of what is called ''confusional insanity.'' The characteristics of such insanity as explained by expert witnesses for the defense consist of such a state of mind as to render the sufferer incapable of knowing the nature of the act, or an uncontrollable impulse to do certain things. It cannot be said that this latter element was not before the jury. Defendant's experts expressed the opinion that, under the facts presented to them, the defendant ''was impelled by a force over which he had no control''; that among the delusions found on an examination of the defendant was ''the impulse to do things, and an impulse over which he had no control''; and, again: ''He was unable to control the act which he did, in my judgment.''

All this was ample justification for instructing the jury as to the application of this form of insanity to the case.

As heretofore stated, the only controverted points in this case are as to the defendant's mental sanity and responsibility for the homicide and, if he was responsible, the degree of his guilt.

We find no error in the trial indicating that there was a miscarriage of justice in this case.

Judgment affirmed.

Lawlor, J., Waste, J., Wilbur, J., Richards, J., *pro tem.*, Shurtleff J., and Shaw, C. J., concurred.