235 P.2d 1011

**STATE v. EISENSTEIN.**

No. 1012.

Supreme Court of Arizona.

Sept. 24, 1951.

Rehearing Denied Oct. 16, 1951.

Fred O. Wilson, Atty. Gen., Phil J. Munch, Asst. Atty. Gen., Warren L. McCarthy, Maricopa County, Phoenix, Atty. (Joseph F. Walton, Phoenix, of counsel), for appellee.

Laney & Laney and Lewkowitz & Weland, all of Phoenix, for appellant.

LA PRADE, Justice.

This is an appeal by the defendant, Max Alter Eisenstein, from a judgment of the Superior Court of Maricopa County, convicting him of murder in the first degree and sentencing him to life imprisonment, and from the order overruling his motion for a new trial. No challenge is made to the sufficiency of the evidence to justify the verdict and judgment. All of the grounds of appeal, being eleven in number, relate to assigned procedural defects that are claimed to have been so prejudicial as to have deprived defendant of a fair trial.

## Ground of Appeal No. 1

 Over objection of defendant, the deputy county attorney, Mr. Joseph Walton, in charge of the prosecution, was permitted to withdraw from a long hypothetical question put to the state's psychiatrist, Dr. Bruce D. Hart, the following assumption: "Assuming that during this period he was * * * capable of committing an impulsive act of violence without realizing the nature of that act."

Dr. Hart was of the opinion that the defendant was legally sane at the time the evidence showed he killed his wife. For the doctor to have assumed it to be true that at the time of the killing the defendant was capable of committing an impulsive act of violence without realizing the nature of that act would have required an answer to the effect that the defendant was insane. The assumption was erroneous in that it assumed the very fact in issue. It is the position of appellant that the hypothetical question, as finally put, failed to incorporate essential evidence and assumed a situation contrary to the evidence. Other expert and lay witnesses had given testimony to the effect that at the time of the killing in question and on two other occasions (1941 and 1945) when the defendant had had severe mental disturbances he was capable of committing impulsive acts of violence, without realizing the nature and consequences of the acts. It is the contention of appellant that this evidence should have been incorporated in the hypothetical question. This testimony in its very nature was opinion evidence. The opinion of an expert cannot be predicated on the opinion of another expert. 20 Am. Jur., Evidence, sec. 791; Mount Royal Cab Co. v. Dolan, 168 Md. 633, 179 A. 54, 98 A.L.R. 1106; Christiansen v. Hollings, 44 Cal.App.2d 332, 112 P.2d 723, at page 730. In this respect, the question, as originally put, was erroneous and, as finally put omitting this erroneous assumption, was correct. The foregoing assignment is without merit.

## Ground of Appeal No. 2

It is claimed that the court erred in permitting, over objection of counsel for the defendant, the prosecutor to put the following questions to, and elicit the following answers from the state's psychiatrist, William B. McGrath, M.D.:

"Mr. Walton: Q. Assuming the truth of the testimony of Dr. Bendheim here in the

courtroom concerning the past medical record and history of the defendant, that is, the testimony which you have heard and remember, and on the basis of that testimony as true and on the basis of your examination and your observation, have you arrived at an opinion regarding the defendant's sanity or lack of sanity on the 13th day of December, 1949, and by that I mean whether he knew the nature and quality of the alleged act and whether he knew right from wrong?

"Mr. Laney: Just a moment, object to that, may it please the court, on the same grounds and for the reason it would assume that the witness remembered everything that Dr. Bendheim stated and all the data on which Dr. Bendheim depended and he must put in a hypothetical question those matters just as I was compelled to do.

"The Court: Were you present during the testimony of Dr. Bendheim? A Yes, sir.

"The Court: Throughout the testimony of Dr. Bendheim? A Yes, sir."

 It is appellant's position that it was an abuse of discretion to permit the expert witness to assume the truth of a portion of another witness' testimony by merely characterizing that portion of the testimony of the other witness "concerning the past record and medical history of the defendant, that is the testimony *which you have heard and remember*." (Emphasis supplied.) It is argued that it was not made plain what particular portions of the prior witness' testimony were assumed to be true and not made plain what portions thereof the expert witness "heard and remembers". An expert may give his opinion based on both the evidence, as stated in the hypothetical question, and upon his personal examination of the accused. State v. Gevrez, 61 Ariz. 296, 148 P.2d 829. This case points out that where an expert has heard the testimony bearing on the mental condition of the accused he may be permitted, under certain circumstances, to give his opinion based on the evidence as heard by him, assuming it to be true, but that the putting of a hypothetical question, setting out the facts as assumed, is the better and customary practice. This procedural error was not of sufficient consequence to be deemed prejudicial. Especially is this true, in view of the extended cross-examination of this witness, wherein he was repeatedly asked if he had given full consideration to much conduct and many enumerated acts of the defendant which showed a deviation from normal. There is no merit to the assignment under consideration.

## Ground of Appeal No. 3

 The third assignment of error challenges the ruling of the trial court in refusing to permit a lay witness to state his opinion as to the sanity of the accused. This particular witness, Mr. Clark, had owned and operated a private sanitarium in Phoenix, specializing in the care and treatment of mental cases designated by the witness as for the "acutely insane".

It was at his institution, in 1941, that Mr. Eisenstein was under the care of Dr. Kingsley, a well-known psychiatrist. Mr. Clark testified that he and his wife, a registered nurse, under the direction of physicians, had treated and cared for more than 1,000 mentally defective patients. The question, to which an objection was sustained, reads as follows: "Q Now, will you describe to the jury what you had to do with this insane man in giving those treatments?" The objection to the question was upon the ground that it referred to the defendant as an "insane man". Counsel for defendant then put this question: "Q Was he insane?" Objection was made upon the ground the witness was not qualified to answer and the objection was sustained. · It is the rule that laymen, regardless of whether they have acquired any skill with relation to insanity, may, upon stating their observations of a given person, testify whether, in their opinion, that person was insane. Non-expert witnesses may express opinions as to sanity or insanity only after they have testified to acts, conversations and conduct of the person whose sanity is in question, which to some extent indicates sanity or lack of sanity and upon which they base their opinions. Such a witness must testify from personal knowledge and observation and not from reputation. 20 Am.Jur. Evidence, sec. 852. Technically, the witness should have been allowed to answer the question. No prejudicial error resulted in view of the fact that the witness had previously testified that he operated his hospital for the "acutely insane", and that under the direction of Dr. Kingsley he treated Mr. Eisenstein for "acute insanity".

## Ground of Appeal No. 4

Appellant submits that the court erred in sustaining the objections of the county attorney to questions put to the defendant's witness, Mary Jane Johnson, concerning statements made to her by the deceased Mrs. Eisenstein on the night before her death when she was a visitor at the home of Mrs. Johnson. Mrs. Johnson testified that Mrs. Eisenstein visited at her home on the evening before the tragedy from about 8:00 p. m. until about midnight. Questions were then put to the witness for the avowed purpose of showing that Mrs. Eisenstein had stated that the meeting next morning was for the purpose of talking about a reconciliation with her husband at which time she was going to insist as a condition of reconciliation that defendant deed back to her the business property on East Van Buren Street. Objection was made on the ground that it was hearsay. Objection was sustained and the witness was permitted only to testify that Mrs. Eisenstein had stated that she was to have an appointment the next morning with her husband. The witness was recalled later and counsel for defendant again asked her to "state what further, if anything, she (Mrs. Eisenstein) said as to her plans the next morning". Following further objection by the county attorney, the court said: "The only thing the Court permitted was the act of meeting.

I feel it is hearsay and sustain the objection."

As a proposition of law supporting this ground of appeal and assignment of error, appellant makes the following statement: "A person's plan and intention to do a particular act in the near future may be evidenced, under an exception to the hearsay rule, by the person's own statement as to the plan and intention, and is of evidentiary value in tending to show that the plan and intention was probably carried out."

For authority, he refers to VI Wigmore, 3rd Edition 79, sec. 1725, and cites cases to the effect that declarations by the decedent were admissible as statements of her mental condition at that time and to prove her design, and states that the additional portion of her purpose in meeting her husband was corroborative of what defendant testified was his rememberance of what happened immediately preceding the tragedy. The defendant testified that he had an appointment to meet his wife at her home on the morning of the tragedy, that the appointment was made on the night before by telephone, that Mrs. Eisenstein was going to see a friend of hers that night, that he was to come for breakfast the next morning and that they were to talk things over. It is argued that the statement of design is admissible in its entirety as an exception to the hearsay rule. While the authorities cited by appellant tend to sustain his position, there are holdings to the contrary. See Ausmus v. People, 47 Colo. 167, 107 P.

204; a homicide case, in which testimony that the alleged decedent stated to a witness when he filed upon his homestead that when he got ready to leave, he might have to leave in 15 minutes and light out, was held inadmissible as hearsay; People v. Estes, 188 Cal. 511, 206 P. 52, ruling the admission of testimony by decedent's sister that the decedent, defendant's wife, had an appointment to meet defendant on the night of the homicide, which had been made by decedent, was erroneous because such testimony was hearsay as to defendant, but not prejudicial where the sister also testified that defendant stated to her, after the homicide, that he kept the appointment, thereby establishing his knowledge thereof; State v. Waggoner, 49 N.M. 399, 165 P.2d 122, in prosecution for assault with intent to kill, testimony as to oral statements, made to witnesses before incident leading to assault, by one who died after assault and before trial, was held inadmissible as hearsay, irrelevant and incompetent; Underhill's Criminal Evidence, 4th Ed. sec. 567, stating: " * * * But declarations, prior to the crime, forming no part of the res gestae of a relevent act and not communicated to the accused, or if known to him, but not acquiesced in, or statements and accusations by deceased which are narrative in their form and inadmissible as dying declarations, are generally rejected."

In the instant case, testimony was admitted establishing the fact that there was to be a meeting of deceased and defendant. The excluded portion of deceased's declara-

tions related to matters to be discussed and was narrative in form. The purpose of the meeting was stated by defendant in his own testimony that "they were to talk things over", and while counsel for appellant argue that the excluded testimony was corroborative of defendant's testimony, it should be noted that corroboration thereof was made by testimony of the state's witness, Eugene Eisenstein, appellant's son, whose testimony was in the record before the examination of Mary Jane Johnson.

 The general rule is that statements or declarations made by a deceased prior to his unlawful death and which form no part of the res gestae are inadmissible in evidence against one accused of the unlawful killing. To admit this type of testimony might involve compelling the court and jury to listen to an irrelevant narration of hearsay evidence. If the appellant were complaining that he had been denied the opportunity to put in evidence declarations of the deceased which would have negatived the state's position that he was a trespasser and had intruded into the home with the intent to kill, then his complaint would fall on attentive ears. This privilege was not denied him. He was permitted to establish by his own testimony that he went to the home of his deceased wife by engagement. No error.

### Ground of Appeal No. 5

 Appellant contends that his constitutional rights have been invaded because of a question which the prosecutor asked the witness Andres concerning what church he attended. In support of this ground of appeal and assignment of error he cites Section 12 of Article 2 of the Constitution of Arizona reading as follows: " * * * No religious qualification shall be required for any public office or employment, nor shall any person be incompetent as a witness or juror in consequence of his opinion on matters of religion, *nor be questioned touching his religious belief in any court of justice to affect the weight of his testimony.*" (Emphasis supplied.)

The question propounded, without objection, was:

"Q. What church do you attend? A. I attend a number of different churches."

The answer to this question was volunteered in response to a later question, as follows:

"Q. You didn't at any time of the examination recall any headlines or pictures or anything like that? A. No, I don't recall it but when I made the report and discussed the report with Dr. Bendheim this was mentioned. *You asked me what church I attend. I do not attend any church that Mr. Eisenstein might attend. I attend churches, the Presbyterian church or other churches. I do not attend the church which Mr. Eisenstein attends.*" (Emphasis supplied.)

The constitutional provision quoted above has been considered in two Arizona cases: Fernandez v. State, 16 Ariz. 269, 144 P. 640, and Tucker v. Reil, 51 Ariz. 357, 77 P.2d 203. In the first case, the court merely ruled that questions put to an aged Indian woman to test her belief in God or the Great Spirit were improper. In the latter case, a witness was asked in regard to his membership in a particular church, and the court ruled he was, in effect, being questioned in regard to his religious belief, and that it was erroneous, over objection, to permit questioning any of defendant's witnesses in regard to their religious affiliations. It is to be observed that in the instant case defendant's counsel made no objection and, in fact, propounded similar questions to his own witness, Morris Meckler, showing that the witness and defendant were both members of the Beth El Congregation.

It is the general rule that unless objection is made to the admission of evidence, it cannot be urged on appeal that it was error for the court to admit it. Tucker v. Reil, supra. It is also the usually accepted rule that where counsel has himself injected a certain issue into the case, he may not object because the other party also introduces evidence of a similar nature. 64 C.J. 172, sec. 193, citing Murphy v. Whitlow, 1 Ariz. 340, 25 P. 532. Likewise, the questioning of defendant by the county attorney as to whether Rabbi Krohn visited him at the jail was not pre-judicial error, since defendant's church affiliation was clearly established by his own witnesses. It follows that no prejudicial error resulted from the questioning by the county attorney to which defendant's counsel did not then object but of which they now complain.

## Ground of Appeal No. 6

It is claimed that the trial court erred in summoning a juror for examination in chambers and questioning him as to an interview he purportedly had with defendant at the jail shortly after the killing. Appellant asserts the juror thereby "was intimidated and coerced into an attitude favorable to the prosecution, which he well knew was the only side that could cause him trouble for his failure to mention the visit in his voir dire examination." After discovering that the juror had paid defendant a visit in jail, the deputy county attorney moved for a mistrial to which counsel for defendant *objected* on the grounds that there was no claim the juror was actually disqualified and the granting of a mistrial would do a serious injustice to the defendant on account of the expense and hardship involved. The motion for mistrial was *denied*. Then counsel for the state gave notice to the court of his intention to call the juror, Edwin C. Moore, as a witness claiming the juror's evidence might be relevant to whether the defendant at that time appeared to be sane or insane. Thereafter the matter was taken up in chambers

330

and counsel for defendant objected to the state calling the juror as a witness on the ground it was a mere fishing expedition and would tend to intimidate the juror and make him feel that he had to vote with the prosecution in order not to be proceeded against in some way himself. The court called the juror into chambers in the presence of the attorneys for both sides, and stated that it had been called to the court's attention there had been a visit by him and the defendant at the county jail on December 15, 1949, lasting about a half hour, and invited the juror to tell about it. In response, the juror told of going to the jail merely to take a message to defendant from his neighbor, and that he got some cigarettes for the defendant at his request. He was asked if at that time he formed any opinion as to defendant's mental condition, whether he was sane or insane, to which Mr. Moore answered "No". The juror was questioned at length by counsel for the defendant, the deputy county attorney and the court. Counsel for defendant specifically elicited from Mr. Moore that he would not in the least be intimidated on account of the interview. Mr. Moore was a retired police officer with 24 years of service all of which facts had been brought out on his voir dire examination and personally known to counsel for defendant. At the conclusion of the interview, counsel for the state announced that he was perfectly satisfied with the interview. Defendant's counsel commented as follows: "We are satisfied except we hope that bringing this to the Court by the officers will not be unfair to our client and will not in any way intimidate this juror. All of this is subject to our objection that we have heretofore interposed."

This statement is, to say the least, incongruous. Its elements are incombinable in that one cannot say he is satisfied and in the same breath reserve the right to rely on his objection theretofore announced which, at the time made, indicated that he was not satisfied. The court admonished the juror that he was not to consider any of the disclosures made upon the interview or statements made by court or counsel as evidence in the case, at which time the juror stated: "The other jurors as far as I am concerned won't know what happened down here."

We are not able to glean from any of this proceeding wherein the juror was in any manner coerced or intimidated. Cases cited by appellant on this assignment of error are Whitson v. State, 65 Ariz. 395, 181 P.2d 822; People ex rel. Flaherty v. Neilson, 22 Hun., N.Y., 1. These cases are easily distinguishable from the instant case as a reading of them will disclose. The assignment is without merit.

Ground of Appeal No. 7

 Prejudicial error is claimed in the giving of the following instruction to which exception was made: "The rules of evidence ordinarily do not permit the opin-

ions of witnesses to be received as evidence. An exception to this rule exists in the case of expert witnesses, and also in the case of non-expert witnesses relative to the question of sanity or insanity. A person who by education, study and experience has become an expert in any art, science or profession, and who is called as a witness, may give his opinion as to any such matter in which he is versed and which is material to the case. Likewise, non-expert witnesses may give their opinions on questions of sanity or insanity. You should consider such opinions and should weigh the reasons, if any, given therefor. You are not bound, however, by any such opinions. You may give them the weight to which you deem them entitled, whether that be great or slight, and you may reject them, if in your judgment the reasons given therefor are unsound."

It is asserted that the instruction as given is violative of Section 12 of Article 6 of our Constitution reading: "Judges shall not charge juries with respect to matters of fact nor comment thereon, but shall declare the law."

In support of this contention, appellant relies upon the case of Security Ben. Ass'n v. Small, 34 Ariz. 458, 272 P. 647, 650, ruling that a trial court may not extol or disparage testimony of experts or instruct the jury as to how they should appraise the weight of expert testimony, and that to do so is in violation of the constitutional provision referred to. The case is distinguishable from the one at bar, the instruction there given placing emphasis by repetition upon the duty of the jury to disregard opinion evidence and stating "you are not bound to find the facts to be as they have been testified". No such language was used in the instruction here given, reading: " * * * You should consider such opinions and should weigh the reasons, if any, given therefor. You are not bound, however, by any such opinions. You may give them the weight to which you deem them entitled, whether that be great or slight, and you may reject them, if in your judgment the reasons given therefor are unsound."

No single piece of evidence was "singled out" and none given "undue prominence" and the jury was left to determine the weight of the testimony of both expert and non-expert witnesses on an equal basis. In another case cited by appellant, Babb v. State, 18 Ariz 505, 163 P. 259, 260, the instruction given actually singled out the testimony of a certain witness, naming him, and stated: " * * * and if from all the evidence, facts, and circumstances brought out on this trial it appears to you beyond a reasonable doubt that the said witness Dean Becker has testified truthfully, then you should give his testimony the same weight and credence as any other witness."

Clearly such an instruction was erroneous and prejudicial as singling out the testimony of a single witness and giving undue promi-

nence to an isolated fact. The same objection was made in the other case cited by appellant, Schutz v. State, 125 Wis. 452, 104 N. W. 90, 93, where the court said: "it is not proper for the court to select one witness from several, and apply to him or his testimony exclusively rules of consideration equally applicable to others."

There was no such "singling out" of evidence in the instruction given in the instant case; rather, it referred to a class or kind of evidence of *all* witnesses giving such evidence.

It has been held that no instruction will be declared to violate section 12, Article 6 of the Constitution, when considered by itself. Instructions must be considered as a whole, not piecemeal. Vigil v. State, 33 Ariz. 51, 262 P. 14; Macias v. State, 36 Ariz. 140, 283 P. 711; Judd v. State, 41 Ariz. 176, 16 P.2d 720; Wolff v. First Nat. Bank, 47 Ariz. 97, 53 P.2d 1077; Illinois Bankers Life Ass'n v. Theodore, 47 Ariz. 314, 55 P.2d 806. It is the rule that this section must be construed with section 22 of this article, so that violation hereof is not reversible when not prejudicial. Erickson v. State, 14 Ariz. 253, 127 P. 754; Merino v. State, 16 Ariz. 132, 141 P. 710; Vincent v. State, 16 Ariz. 297, 145 P. 241; Blackburn v. State, 31 Ariz. 427, 254 P. 467.

### Ground of Appeal No. 8

This ground of appeal is directed to the action of the trial court in its instructions relating to deliberation and premedita-tion. The claim is that the court erred to the prejudice of the defendant in giving an instruction which greatly emphasized the speed with which deliberation and premeditation may take place, while deleting from defendant's requested instruction language hereinafter shown to have been stricken which laid stress upon the characteristics of these words when placed in balance against their antonyms. The requested instruction is here set out in full, the italicized language being the portions of the submitted instruction that were deleted:

"While the court has instructed you relative to the fact that premeditation and deliberation do not require any particular or specified length of time, still it is proper that I should further define to you the meaning of 'premeditation' and 'deliberation.'

"The adjective 'deliberate' means 'formed, arrived at, or determined upon as a result of careful thought and weighing of considerations; *as a deliberate judgment or plan; carried on coolly and steadily, especially according to a preconceived design;* * * * *Given to weighing facts and arguments with a view to a choice or decision; careful in considering the consequences of a step;* * * * *unhurried;* * * * *Characterized by reflection; dispassionate; not rash,'* * * * *The word is an antonym of 'hasty, impetuous, rash, impulsive.'* * * * *It has been judicially declared that 'Deliberation means careful consideration and examination of the*

reasons for and against a choice or measure.' * * * The verb 'premeditate' means 'To think on, and revolve in the mind, beforehand; to contrive and design previously.' * * *

"*Unless there was such deliberation and premeditation, in no event could the defendant be found guilty of murder in the first degree. Any homicide which is the result of mere unconsidered or rash impulse hastily executed, is not murder in the first degree.*" (Emphasis supplied.)

It is claimed that the instruction, as given, is not in harmony and is contrary to the holding of this court in Moore v. State, 65 Ariz. 70, 174 P.2d 282, 290. In the latter case, the court was considering the effect of an instruction which emphasized that thoughts may follow each other with great rapidity and that cold, calculated judgment may be arrived at quickly. With reference to such an instruction, we said: "But if they are instructed in that vein, which emphasizes the rapidity with which thoughts may follow each other, fairness requires a further instruction placing at least equal emphasis on the true (see definitions above) meaning of the terms. In other words, while the jury may be told that the brain can function rapidly they must not be misled into thinking that an act can at the same time be hasty, hurried, and deliberate or impulsive, unstudied, and premeditated. The extent of the reflection in every case, if it is to pass the test, must fairly and rea-

sonably meet the ordinary and unquestioned significations of the test words."

In the instant case, the court very clearly defined the crimes of murder in the first degree and murder in the second degree and manslaughter. By these instructions the jury was told that to convict one of the crime of murder in the first degree, the evidence must show premeditation. The court was very careful to point out that the unlawful killing of a human being with malice, done deliberately and with premeditation, is murder in the first degree and the unlawful killing of a human being with malice aforethought, but without deliberation or premeditation, is murder in the second degree. The jury was further instructed as follows: "The unlawful killing, if any, must be accomplished with a deliberate and clear intention to take life in order to constitute murder of the first degree. The intention to kill must be the result of deliberate premeditation. There need, however, be no appreciable space of time between the intention to kill unlawfully and the act of killing. They may be as instantaneous as the consecutive thoughts of the human mind. It is only necessary that an act of unlawful killing be preceded by a concurrence of will, by deliberation and premeditation on the part of the slayer, and if such is the case the killing, if not justified or excusable, is murder of the first degree, no matter how rapidly these thoughts of the mind succeed each other or how quickly they may be followed by the act of killing. A man

may do a thing, willfully, deliberately and intentionally from a moment's reflection as well as after pondering over the situation for a day or for a month or for a year. There is nothing in the sections of the penal code relating to the subject which indicates that the Legislature meant to assign any particular period to this process of deliberation or premeditation in order to bring the act of murder within the first degree, but while the fatal purpose or intention and its execution may follow this rapidly upon each other it is proper for you to take into consideration the shortness of such intervals, if such be the fact, in considering whether such sudden and speedy execution may not be attributed to sudden passion and anger rather than the deliberation and premeditation which must characterize murder in the first degree."

Following this instruction, the court gave the instruction, as deleted, supra, which uninterruptedly reads as follows: "While the Court has instructed you relative to the fact that premeditation and deliberation do not require any particular or specified length of time, still it is proper that I should further define to you the meaning of premeditation and deliberation. The adjective 'deliberate' means formed, arrived at or determined upon as a result of careful thought and weighing of consideration. The verb 'premeditate' means to think on and revolve in the mind beforehand, to contrive and design previously."

It will be noted that the court repeatedly stressed that the intention to kill must be the result of deliberate premeditation. It is true that it was mentioned that there need be no appreciable space of time between the intention to kill unlawfully and the act of killing, but there was stressed the necessity of it appearing that the unlawful killing was preceded by "concurrence of will" by deliberation and premeditation. Then, after advising the jury that the fatal purpose or intention and its execution may follow rapidly upon each other, they were advised that "it is proper for you to take into consideration *the shortness of such intervals if such be the fact, in considering whether such sudden and speedy execution may not be attributed to sudden passion and anger rather than the deliberation and premeditation which must characterize murder in the first degree.*"

The court then meticulously defined the adjective "deliberate" by telling the jury that it means "formed, arrived at or determined upon as a result of careful thought and weighing of consideration". It then defined the verb "premeditate" by stating that it means "to think on and revolve in the mind beforehand, to contrive and design previously". In our opinion the instructions, as given, constituted a fair and honest appraisal of the elements that must be present to constitute murder in the first degree. The stricken portion of the instruction, although copied from the Moore case, was not essential to a determination of the Moore case and is in no man-

ner persuasive of the fact that the words "deliberate" and "premeditate" were not understandingly defined. The extended discourse concerning the etymologies of the words "premeditate" and "deliberate" contained in the Moore case, suggesting their synonyms and antonyms, while informative, is a matter of erudite learning, and was in no manner necessary to the final, commonplace and understandable definitions here given. We approve of the instructions and believe them to be entirely consonant with the pronouncements in the Moore case.

### Ground of Appeal No. 9

Exception was made to the following instruction with reference to insanity, which is here assigned as error. The instruction reads as follows:

"You are instructed, ladies and gentlemen, that although the defendant may have been laboring at the time of the alleged homicide under partial insanity, as for instance suffering from some insane delusion and hallucination or some loss of memory or if at the time he was actuated and impelled by some passion, some hatred, some anger, some revenge which caused him to commit the alleged homicide, or if he simply lacked normal development of his moral sensibilities so he had slight regard for human life—as I say, even though he was suffering from or influenced by or impelled by any and all of those things, or things of a similar nature in the commission of the alleged homicide, still, being so impelled and influenced, if he understood at the time of the commission of the alleged homicide or the other acts alleged—if you believe beyond a reasonable doubt that the defendant committed those acts—still, if he understood and appreciated the nature and character of his action and its consequences, and if he had knowledge that his acts were wrong and criminal, and in violation of law and that they might subject him to punishment, and if he knew that if he did the acts he would do wrong, then and in that event he is responsible for his acts, and such partial insanity, such passion, such hatred, such revenge, such moral insensibility or the like, if he was actuated by any such, would not be sufficient to release him from the responsibility of his criminal act.

"You are further instructed, ladies and gentlemen, that if a person entertain a morbid state of passion unsettling the physical or moral system, the mental faculties remaining meanwhile in such a condition that a person can distinguish between right and wrong and understand the nature and quality of his acts and the consequences thereof, he is held legally responsible for his conduct and amenable to the laws of the State of Arizona."

Complaint is made that the first paragraph of this instruction is argumentative and not supported by the evidence, and tended to belittle the mental misfortune and illness of the defendant and was repetitious of the next paragraph. The first paragraph of this instruction has heretofore been con-

sidered and received the approval of this court in the case of State v. Macias, 60 Ariz. 93, 131 P.2d 810. Under the facts and circumstances of this case, we feel that it was entirely appropriate and see no occasion to depart from the pronouncements therein made. With reference to the last paragraph of the instruction, the complaint is that there was not sufficient evidence of a morbid state of passion unsettling the physical or moral system of the defendant and, if there was, then that the instruction was a comment on the evidence and that it was "casting about, trying to brand the defendant with a morbid state of passion". There was a plethora of evidence offered by the defendant to the effect that he was legally insane at the time of the commission of the offense and had been for a number of years mentally unstable and on two prior occasions acutely insane. A person is said to entertain a morbid state of passion when his passion is intense, vehement, and indicative of emotional excitement, prompting to violent and aggressive action as rage, anger, hatred, furious resentment or terror, induced by, aggravated or superimposed on a diseased or sickly mind. See definition "passion" Black's Law Dictionary, Webster's New International Dictionary, Second Edition, Unabridged. There was evidence from which the jury might well have concluded that the defendant's acts were actuated by uncontrollable passion induced by a sick and/or diseased mind.

■ The effect of the instruction is that, regardless of the fact that a person entertains a morbid state of passion sufficient to unsettle the physical and moral system, yet if the mental faculties remaining are such that such a person can distinguish between right and wrong and understand the nature and quality of his acts and the consequences thereof, he is legally responsible. The instruction correctly stated the law on this phase of the case.

## Ground of Appeal No. 10

■ The ground for this specification lies in the fact that the trial court refused to give an instruction formulated by the defendant to the effect that if the evidence failed to show any motive on the part of the defendant to commit the crime charged, such want of motive, if any, was a circumstance to be considered in favor of defendant's innocence. The general rule is that "If the offense is made out clearly, it is not necessary to prove motive, and the court properly may so charge, or may refuse a request to charge to the contrary." 23 C.J.S. Criminal Law, § 1198, citing Evans v. State, 199 Ind. 55, 155 N.E. 203. There was much direct and circumstantial evidence indicating the intent of the defendant to take affirmative action. In this situation, no instruction as to motive was required. State v. Santino, Mo., 186 S.W. 976.

Briefly, the evidence disclosed that defendant and his wife had been separated and living apart for some months. During the summer of 1949 defendant had filed a complaint against his wife for divorce to

which she had filed a cross-complaint. In October of 1949, a final property settlement had been arrived at but formal divorce proceedings had not been concluded. Prior to and during the time that the divorce action was pending, there had been much crimination and recrimination between the parties. The defendant had accused his wife of undue attentions to another man and with cheating him financially, hiding moneys belonging to the community and making false income tax returns to the Federal Government, which he had signed at the request of his wife and assertedly not knowing the falsity thereof. On the morning of the killing, defendant went to the residence of his wife, parked his car a short distance down the street and was seen walking up and down the private driveway leading from the street to the garage premises at the rear. The state's evidence showed that he effected entrance to the house through the back door by use of his own key. At the time he was partially intoxicated and armed with a .38 revolver. By his own testimony he claimed that shortly after entering, his wife applied an opprobrious epithet and demanded that he convey to her valuable real estate that had been set aside to him in the property settlement agreement theretofore reached. In addition to the legal defense of not guilty by reason of insanity, defendant also endeavored to explain away the killing by saying that it was accidental and occurred during a scuffle between him and his wife at a time when he was endeavoring to commit suicide. In view of the jury's verdict, no credence was placed in this explanation. Within the rules referred to above, there was ample evidence, direct and circumstantial, from which the jury might well have inferred a predetermined intent to kill, under which circumstances an instruction to the jury that they might consider a want of motive as a circumstance to be considered as favoring the accused would have been entirely inappropriate and not justified by the evidence.

## Ground of Appeal No. 11

This particular ground of appeal complains of the fact that the court did not, of its own motion, instruct the jury that in the event they returned a verdict finding defendant not guilty by reason of insanity, defendant would not necessarily be turned loose upon society but that the court would have the power to inquire into his present sanity and that if it were determined that defendant was presently insane, he would be committed to the state hospital for the insane and there to be detained until he was well. By the provisions of section 44-1917, A.C.A.1939, there is conferred upon the court the power to make inquiry into the sanity of one who has been found not guilty of a crime upon the ground of insanity. The trial of the defendant was held more than nine months after the shooting. The jury was specifically instructed that, in view of the defense made, the defendant could not be found guilty of any

offense if, at the time of the alleged commission of the homicide, he, by reason of mental affliction and illness, did not know the nature and quality of the act he was charged with having committed, or if he did, that he did not know or realize that he was doing a wrong or criminal act; and the jury was further instructed that before they could find the defendant guilty of any offense, they would have to find, beyond a reasonable doubt, that the defendant at the time of the alleged offense was in such a state of mind that he could distinguish between right and wrong with reference to the particular act and could and did realize the quality and nature of the act he was doing. At the trial, defendant's present sanity was assumed and was not in issue. It was only the defendant's sanity at the time of the alleged offense that was in issue. The jury was so specifically instructed. The jury was further charged that if they found the defendant at the time he committed the act was incapacitated by reason of legal insanity, as the same had been defined to them, they should acquit the defendant, and that it was no concern that he might have recovered and was sane at the time of the trial. Had counsel for defendant thought that their client was insane at the time of the trial, we are confident they would have presented to the court and jury that issue, or had that issue determined in a collateral proceeding. It would have been error for the court to have instructed the jury, as counsel suggests, and injected into the trial an issue that was not properly before the court.

Regardless of the fact that we have carefully examined the several grounds of appeal, we have, in view of the gravity of the penalty, considered the record as a whole to determine whether, as required by Article 6, Section 22 of the Constitution, justice has been done. On the record there was but one question going to the merits of the case, and that is whether the jury was justified in concluding from the evidence before them that the defendant at the time he fired the fatal shot was legally sane and accountable for his act. The jury, on evidence legally sufficient to sustain such a conclusion, determined that he was legally sane and that the killing was deliberate and premeditated. The defendant's sanity at the time of the killing was fairly put to the jury. In view of all the evidence, its determination on this point is conclusive upon this court. We find no errors in the rulings of the trial court so prejudicial as to have deprived defendant of a fair trial.

The judgment is affirmed.

UDALL, C. J., and STANFORD, PHELPS and DE CONCINI, JJ., concur.